[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ware v. Wine*, Slip Opinion No. 2022-Ohio-4472.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4472

THE STATE EX REL. WARE *v.* WINE ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ware v. Wine*, Slip Opinion No. 2022-Ohio-4472.]

*Mandamus—Public-records requests—Writ denied in part and granted in part and statutory damages and court costs awarded.*

(No. 2021-1482—Submitted August 2, 2022—Decided December 15, 2022.)

IN MANDAMUS.

_____

**Per Curiam Opinion announcing the judgment of the court.**

**I. INTRODUCTION**

{¶ 1} Relator, Kimani Ware, an inmate at the Trumbull Correctional Institution, has filed an original action for a writ of mandamus against respondents, Waylon Wine, Tracy Ventura, and Anthony Davis (collectively, "TCI").[1]  Ware seeks production of records responsive to six public-records requests he sent in June

_____

1. Wine is the manager of Ware's prison unit, Ventura is the prison recreation manager, and Davis is the deputy warden of operations.  They do not dispute that they are record custodians.

2021.  He also requests statutory damages and court costs.  On February 23, 2022, we granted an alternative writ of mandamus, ordering the parties to submit evidence and briefs.  166 Ohio St.3d 1404, 2022-Ohio-461, 181 N.E.3d 1190.  We now grant the requested writ of mandamus in part, deny it in part, and award Ware court costs and $3,000 in statutory damages.

## II. BACKGROUND

{¶ 2} On June 18, 2021, Ware sent a prison kite to Wine requesting "a copy of the B-unit staff schedule."  Wine responded, "[I]t is posted in your unit[']s information case."  Wine did not provide Ware a copy of the B-unit staff schedule.

{¶ 3} On June 21, Ware sent two separate public-records requests to TCI's recreation department, again by prison kite.  The two kites requested the same document: "a copy of TCI's inmate recreation schedule."  Ventura responded separately to the two requests, writing each time that the schedule had been posted "in the blocks" earlier that day.  Ventura did not send Ware a copy of the inmate recreation schedule.

{¶ 4} Also on June 21, Ware sent two kites to Davis, each requesting a copy of a June 17, 2021 memo that was sent to all TCI staff.  In his responses, Davis informed Ware that such requests should be made to a Mr. Booth.  Davis did not provide a copy of the memo to Ware.

{¶ 5} Finally, on June 22, Ware sent a kite to Wine asking for "a copy of the housing unit split range schedules for 14 [E]ast, [J]une and [J]uly, 2021."  Wine replied that the record had been "posted on the unit information board."  Wine did not provide a copy of the record to Ware.

{¶ 6} On December 7, 2021, Ware filed his complaint for a writ of mandamus in this court.

2

## III. LEGAL ANALYSIS

### A. *The mandamus claim*

{¶ 7} Ohio's Public Records Act, R.C. 149.43, requires a public office to make copies of public records available to any person upon request within a reasonable period of time. R.C. 149.43(B)(1). A "public record" is a record "kept by any public office." R.C. 149.43(A)(1). Mandamus is an appropriate remedy by which to compel compliance with the Public Records Act. *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6.

{¶ 8} To be entitled to the writ, Ware must demonstrate that he has a clear legal right to the requested relief and that TCI has a clear legal duty to provide that relief. *State ex rel. Cincinnati Enquirer v. Sage*, 142 Ohio St.3d 392, 2015-Ohio-974, 31 N.E.3d 616, ¶ 10. In a public-records mandamus action, the relator is not required to demonstrate the absence of an adequate remedy in the ordinary course of the law. *State ex rel. Frank v. Ohio State Univ.*, 161 Ohio St.3d 112, 2020-Ohio-3422, 161 N.E.3d 559, ¶ 7. Ware must prove his right to relief by clear and convincing evidence. *Id.* However, the Public Records Act "is construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records." *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 376, 662 N.E.2d 334 (1996).

{¶ 9} Ware requested four records (by way of six messages), but TCI did not deny all four requests. Davis told Ware that his request for the June 17 memo should be sent to "Mr. Booth." When Ware responded that he was seeking the record from Davis because Davis was the person who had distributed the memo to TCI staff, Davis again directed him to make his request to Booth, explaining, "All documents that are released are tracked." There is no evidence in the record indicating that Ware followed up with Booth. Ware has failed to establish that Davis was the custodian of the record in question or that by referring him to a

different employee/office within TCI, Davis denied the request. *See Frank* at ¶ 11 (holding that Ohio State University did not deny a public-records request when it referred the requester to a different office). We therefore deny Ware's request for a writ of mandamus as to the June 17 memo, and we award no relief against Davis.

{¶ 10} As for Ware's requests for the three remaining records—the B-unit staff schedule, the inmate recreation schedule, and the "housing unit split range" schedules—TCI concedes that it received the requests and that it denied them. TCI has not alleged that the records are subject to a statutory exemption from disclosure; its sole defense is that "[t]he vast majority of—if not all—of the information Ware requested from [TCI] was already accessible to him." The theory is that Ware is not entitled to receive a physical copy of a record so long as he has an opportunity to see the record and the information contained therein.

{¶ 11} In support of its argument, TCI cites *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), for the proposition that prison administrators should be accorded wide-ranging deference to adopt policies and practices that best serve to preserve institutional order and safety. We have previously declined to compel prison officials to allow inmates to inspect copies of requested records when the officials have provided a security-based rationale for not permitting inspection and have offered instead to provide copies. *See, e.g.*, *State ex rel. McDougald v. Sehlmeyer*, 162 Ohio St.3d 94, 2020-Ohio-3927, 164 N.E.3d 366, ¶ 13-15. But here, TCI is refusing to provide paper copies to Ware and has failed to explain why doing so would create a security risk.

{¶ 12} TCI breached a statutory obligation to provide Ware with copies of the B-unit staff schedule, the inmate recreation schedule, and the "housing unit split range" schedules. We grant Ware's request for a writ of mandamus as to these three requested records.

4

*B. Statutory damages*

**{¶ 13}** A person requesting public records "shall" be entitled to recover an award of statutory damages "if a court determines that the public office or the person responsible for the public records failed to comply with an obligation in accordance with [R.C. 149.43(B)]." R.C. 149.43(C)(2). Statutory damages are calculated at the rate of $100 for every business day the public office or person responsible for the requested public records has failed to comply with an obligation under R.C. 149.43(B), starting from the date of the filing of a complaint in mandamus, with a maximum award of $1,000. R.C. 149.43(C)(2). Ware has requested a total award of $4,000—that is, the $1,000 maximum for each of the four requests. Ware filed this mandamus action on December 7, 2021, so the available statutory damages have reached the maximum amount of $1,000. But because we have denied relief as to one of his requests, the potential award is capped at $3,000.

**{¶ 14}** TCI offers only one argument in opposition to the statutory-damages claim. To qualify for statutory damages, a requester must transmit the request by "hand delivery, electronic submission, or certified mail." R.C. 149.43(C)(2). TCI asserts that Ware did not employ a qualifying method. According to TCI, a prison kite does not qualify as an "electronic submission," because in general, the system is used only internally and is not connected to the Internet. The evidence shows that TCI uses the JPay system for inmate kites. In *State ex rel. Griffin v. Sehlmeyer*, 165 Ohio St.3d 315, 2021-Ohio-1419, 179 N.E.3d 60, ¶ 21, we held that the JPay system is a form of electronic transmission within the meaning of R.C. 149.43(C)(2). Therefore, Ware has satisfied the method-of-transmission requirement for an award of statutory damages.

**{¶ 15}** We award Ware $3,000 in statutory damages.

*C. Court costs*

{¶ 16} Finally, Ware seeks an award of court costs. R.C. 149.43(C)(3)(a)(i) states: "If the court orders the public office or the person responsible for the public record to comply with [R.C. 149.43(B)], the court shall determine and award to the relator all court costs * * *." Although it is unusual for pro se inmates to incur costs in the lawsuits they file, in this instance, Ware elected to pay the costs upfront rather than file an affidavit of indigency. We therefore award Ware court costs.

## IV. CONCLUSION

{¶ 17} For the reasons stated above, we grant the requested writ of mandamus in part, deny it in part, and award Ware court costs and $3,000 in statutory damages.

Writ granted in part
and denied in part.

FISCHER and STEWART, JJ., concur.

DEWINE, J., concurs in part and concurs in judgment only in part, with an opinion joined by O'CONNOR, C.J., except that she would not award statutory damages.

KENNEDY, J., concurs in part and dissents in part, with an opinion joined by DONNELLY, J.

BRUNNER, J., concurs in part and dissents in part and would grant the writ in full and would award $4,000 in statutory damages.

_____

**DEWINE, J., concurring in part and concurring in judgment only in part.**

{¶ 18} I join the lead opinion insofar as it grants a writ of mandamus and awards statutory damages as to the public-records requests sent by Kimani Ware to Waylon Wine and Tracy Ventura. I concur in judgment only as to the denial of the writ as to the request sent to Anthony Davis. I write separately to offer a few points

6

of clarification concerning the request to Davis and to explain my reasons for joining the court's judgment in this regard.

{¶ 19} It is my view that the writ is correctly denied as to the Davis request because Ware has failed to establish that Davis violated the Public Records Act, R.C. 149.43, by referring Ware to another prison employee. R.C. 149.43(B)(1) says that "upon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." And a person allegedly "aggrieved by the failure of a public office or the person responsible for public records to promptly prepare a public record" may commence a mandamus action to compel "the public office or the person responsible for the public record" to comply with their statutory obligations. R.C. 149.43(C)(1)(b).

{¶ 20} A person bringing a mandamus action to enforce access to public records has the burden of showing that he has a clear legal right to the record and that the respondent has a clear legal duty to provide it. *State ex rel. Griffin v. Sehlmeyer*, 165 Ohio St.3d 315, 2021-Ohio-1419, 179 N.E.3d 60, ¶ 10. The relator must establish entitlement to the writ by clear and convincing evidence. *State ex rel. Cincinnati Enquirer v. Sage*, 142 Ohio St.3d 392, 2015-Ohio-974, 31 N.E.3d 616, ¶ 10.

{¶ 21} According to Ware, Davis is the Deputy Warden of Operations at Trumbull Correctional Institution ("TCI"). Ware asked Davis for a copy of a June 17, 2021 memo that had been sent by Davis to TCI staff. Davis responded to Ware's request by stating, "These requests should be made through Mr. Booth." Ware followed up on the request, and Davis reiterated, "These types of [requests] are made to Mr. Booth. All documents that are released are tracked."

{¶ 22} Ware did not name TCI as a respondent "public office" in this action. *See, e.g.*, *State ex rel. Hedenberg v. N. Cent. Corr. Complex*, 162 Ohio St.3d 85, 2020-Ohio-3815, 164 N.E.3d 358; *State ex rel. Ellis v. Maple Hts. Police Dept.*,

158 Ohio St.3d 25, 2019-Ohio-4137, 139 N.E.3d 873. His complaint is brought against three employees at the prison instead. And Ware claims that Davis, specifically, has a clear legal duty to provide the requested record.

**{¶ 23}** Ware does not assert that Davis is a public-records custodian at TCI. Ware's complaint alleges instead that Davis is "a public official as the term is defined by section 149.011(D) of ohio revised code, who hold's [sic] the position of deputy warden of operations which is a public office as the term is defined by section 149.011(A) of ohio revised code." In other words, he argues that the position of deputy warden is a "public office." And he asserts that as a "public official"—which is broadly defined as including "all * * * employees * * * of a public office," R.C. 149.011(D)—Davis has a clear legal duty to provide the record.

**{¶ 24}** But the Public Records Act does not charge all public officials with such a duty. In fact, the statute does not refer to public officials at all. Rather, it directs the "public office or person responsible for public records" to provide the record. R.C. 149.43(B)(1). In doing so, the statute recognizes that public offices may designate appropriate personnel to handle their public-records requests. Thus, we have explained that "R.C. 149.43(B)(1) requires a public-records custodian to provide a copy of a public record to a requester." *Griffin*, 165 Ohio St.3d 315, 2021-Ohio-1419, 179 N.E.3d 60, at ¶ 10.

**{¶ 25}** An employee's redirecting a requester to the proper representative does not, on its own, constitute a denial of the request on behalf of the public office. To conclude otherwise would mean that a person could present a public-records request to any public employee and that particular employee would have a duty to provide the requested record. Suppose a requester handed a request to a motor-vehicle inspector employed by the Ohio Department of Public Safety or a laboratory technician at the Ohio Department of Agriculture. No one would seriously contend that by telling the requester the proper location to submit the

request, these employees would have denied the request on behalf of the public office altogether.

{¶ 26} Ware's complaint and brief do not at all address Davis's referral to Booth. Ware does not contend that Davis's instructions violated the prison's records-release procedures or that there was anything improper about the directive to make the request through Booth. Neither Ware nor Davis have presented any evidence as to what Booth's role is. Importantly, Ware has not indicated that he followed up with Booth, nor has he made any claim that he is being given the runaround. Thus, with respect to Davis, Ware has not demonstrated by clear and convincing evidence that "the public office or records custodian did not make the record available," *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 26.

{¶ 27} For those reasons, I do not find the concerns identified by the justice dissenting in part to be present in this case. And I concur in the judgment of the court because, in my view, Ware has not met his burden of establishing that his request to Davis was denied.

O'CONNOR, C.J., concurs in the foregoing opinion except that she would not award statutory damages.

_____

**KENNEDY, J., concurring in part and dissenting in part.**

{¶ 28} I concur in the majority's decision to grant relator, Kimani Ware, a writ of mandamus and the maximum statutory damages as to the public-records requests he sent to respondents Waylon Wine and Tracy Ventura, whom the lead opinion describes, along with respondent Anthony Davis, as "record custodians" at Trumbull Correctional Institution ("TCI"). Lead opinion, ¶ 1. I part ways with the majority, however, with respect to its decision to deny Ware a writ of mandamus as to the requests he sent to Davis for "a copy of the memo, dated 6/17/21, that was sent out to all TCI staff * * * [for] the split ranges in all unit[s] after 4:30pm"

(hereafter, "the memo"), on the authority of *State ex rel. Frank v. Ohio State Univ.*, 161 Ohio St.3d 112, 2020-Ohio-3422, 161 N.E.3d 559. In my view, the lead opinion improperly expands the reach of *Frank* here. Davis did not rely on *Frank* when denying Ware's public-records request, and respondents did not rely on *Frank* in the merit brief they filed in this court. Because *Frank* is not applicable, this court should apply the plain and unambiguous language of the Public Records Act, R.C. 149.43, to Ware's requests for the memo.

{¶ 29} Ware made a public-records request of a public office. Davis failed to comply with the requirements of the Public Records Act; therefore, I would grant Ware a writ of mandamus ordering Davis to provide the memo to Ware, and I would award Ware $1,000 in statutory damages for Davis's failure to provide the memo to him. Because the majority does otherwise, I dissent in part.

**Facts**

{¶ 30} Ware requested the memo dated June 17, 2021, twice, in quick succession. His first request was by an electronic kite at around 1:25 p.m. on June 21, 2021. At around 1:58 p.m. on that same day, Davis responded: "These requests should be made through Mr. Booth. I sent you very similar language via JPAY. I sent it to all inmates. TCI remains the most least [sic] restrictive Level 3 prison." In response, Ware sent another request for the memo at 2:12 p.m.: "I request a copy of the memo (dated 6/17/21) that was sent to all TCI staff for the split range after 4:30pm[.] [I]'m making my request to you for a copy of that memo (dated 6/17/21), you are the person who sent out to all staff here at [T]rumbull." Davis responded around six minutes later, "These types of [requests] are made to Mr. Booth. All documents that are released are tracked." Ware never received any of the requested records and filed this mandamus action on December 7, 2021.

{¶ 31} Despite the fact that Davis did not rely on *Frank* in support of his responses to Ware's public-records requests for the memo and respondents did not rely on *Frank* in the merit brief they filed in this court, the lead opinion invokes

*Frank* in support of the majority's denial of a writ of mandamus ordering production of the memo. But this court's decision in *Frank* is inapplicable here.

### *State ex rel. Frank v. Ohio State Univ.* is inapplicable

{¶ 32} As noted above, the lead opinion recognizes that Davis is a record custodian at TCI. But the lead opinion does not find that TCI had a special public-records office that oversees release of memos like the one Ware requested or that release of the memo is prohibited under state or federal law. In my view, whether *Frank* applies to this case turns on those material factual determinations.

{¶ 33} In *Frank*, a student's attorney requested records from the Ohio State University concerning the student. Among other records, the request sought records that prosecutors had provided to the university.

{¶ 34} The evidence in *Frank* established that Ohio State has a bifurcated system for handling public-records requests. It has a general public-records office for general public-records requests. That office has a public-records director, a public-records program coordinator, and an official email address for public-records requests.

{¶ 35} Ohio State also has a separate, independent public-records office that addresses public-records requests for student-conduct records, which are prohibited from release by federal law, the Family Education Rights and Privacy Act, 20 U.S.C. 1232g ("FERPA"). That office, the Office of Student Life, Student Conduct, controlled access to records related to student disciplinary proceedings. *Frank*, 161 Ohio St.3d 112, 2020-Ohio-3422, 161 N.E.3d 559, at ¶ 11.

{¶ 36} In *Frank*, the student's attorney sent the request for his client's student-conduct records to Ohio State's public-records office through the official email address for general public-records requests. That office first denied the request because the records sought were exempt from disclosure under R.C. 149.43(A)(1)(v), which exempts from mandatory disclosure "[r]ecords the release of which is prohibited by state or federal law." FERPA permits the release of

personally identifiable information only with the consent of the student or his parents. 20 U.S.C. 1232g(b)(2)(A); 34 C.F.R. 99.30(a). *Frank* at ¶ 10.

{¶ 37} At the time of the initial request, the attorney did not disclose that he was representing a student, and the request did not contain a FERPA waiver. From the perspective of Ohio State's general public-records office, the first request was from a third party seeking a student's protected conduct records, and this court determined that that denial was well founded.

{¶ 38} In reply to Ohio State's response, the student's attorney stated that the requested records were not exempt from disclosure, because the student had provided Ohio State with a FERPA release. The public-records program director responded, indicating that the records the attorney was seeking continued to be subject to the requirements of FERPA despite the student's submission of a waiver to Ohio State. *Id.* at ¶ 5. The public-records director also advised the attorney to contact the Office of Student Life, Student Conduct, for records relating to student disciplinary proceedings:

> [T]o the extent you are seeking student disciplinary records, please contact the Office of Student Life[,] Student Conduct. Pursuant to FERPA, Student Conduct allows for inspection and review of records related to disciplinary proceedings by involved students, and as appropriate, their advisors. They can explain the process for inspection and review of records related to student disciplinary proceedings as well as documentation that may be necessary to allow for inspection and review.

*Id.* at ¶ 11.

{¶ 39} A majority of this court determined that Ohio State's second response did not constitute a denial of the records request. The majority considered the response to the request to be prompt and full, reasoning as follows:

> When, as here, the requested records are sensitive in nature and subject to limitations on disclosure under federal law, it makes sense for [Ohio State] to have referred [the student's attorney] to an office that has the proper expertise for how to lawfully disclose the requested records and how to apply the relevant state and federal regulations. Accordingly, in [Ohio State's] April 8 response to [the student's attorney], [Ohio State] did not deny the public-records request (and we offer no opinion whether [Ohio State] legitimately *could have* denied the request); it merely referred [the student's attorney] to a different office.
>
>           * * *
>
> We conclude that [Ohio State] responded promptly and fully to [the] request and that [the student] is not entitled to a writ of mandamus.

(Emphasis sic.) *Id.*, 161 Ohio St.3d 112, 2020-Ohio-3422, 161 N.E.3d 559, at ¶ 11-12.

{¶ 40} In its response to the records request, Ohio State explained that what the student's attorney sought was not a typical public record and that its release was likely prohibited by federal law but that there was a separate, independent office from which he could seek the records because of their sensitive nature. In *Frank*, a separate office controlled access to records related to student-conduct proceedings and enforced students' privacy rights under FERPA. But this case is not comparable to *Frank*.

{¶ 41} Here, respondents do not argue that there is a separate public-records office at TCI that controls access to memos like the one Ware requested. Respondents also do not argue that release of the memo Ware requested is prohibited by state or federal law. The lead opinion simply applies this court's holding in *Frank* to Davis's denial of Ware's public-records requests without consideration of the highly specialized facts that underpin this court's decision in *Frank*.

{¶ 42} Application of this court's precedent in *Frank* should be limited to public-records requests that present the same particular facts as *Frank*. *Frank* should be applied only when the public office has established an independent public office to handle those particular public-records requests and when the release of the record sought is prohibited by state or federal law. Because this case does not present these particular facts of *Frank*, this court should apply the unambiguous language of the Public Records Act to determine whether Davis's denial of Ware's public-records requests for the memo was proper. In my view, the denial of Ware's requests for the memo was improper under R.C. 149.43.

### Ware's public-records requests were improperly denied

{¶ 43} Ware made two requests to a public office by electronic kite, and as the lead opinion notes, Davis does not dispute that he is a public-records custodian. Ware asked for a copy of the memo, and Davis therefore had a duty to promptly provide Ware with a copy of the memo.

{¶ 44} When Ware made his first request for the memo, Davis gave two reasons why he was not producing the memo: (1) Ware should make the request to Booth and (2) Ware had already received the information contained in the memo. But the exceptions set forth in the Public Records Act do not include either of these exceptions. Davis had an obligation to treat Ware like any other public-records requester. R.C. 149.43(B)(1) provides that "upon request by any person, a public office or person responsible for public records shall make copies of the requested

14

public record available to the requester at cost and within a reasonable period of time." The statute provides two caveats to the duty to make copies of public records available:

- if the record contains information that is exempt, "the public office or the person responsible for the public record shall make available all of the information within the public record that is not exempt," R.C. 149.43(B)(1); and

- "[i]f a requester makes an ambiguous or overly broad request or has difficulty in making a request for copies or inspection of public records * * * such that the public office or the person responsible for the requested public record cannot reasonably identify what public records are being requested, the public office or the person responsible for the requested public record may deny the request but shall provide the requester with an opportunity to revise the request by informing the requester of the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties," R.C. 149.43(B)(2).

{¶ 45} Therefore, the responses available to a public office or the public-records custodian are to provide the record, provide the record with redactions of material that is exempt from disclosure, seek clarification because the request was for unidentifiable material, or deny the request. Of course, denial of a public-records request is appropriate if the public record does not exist or if the public record is fully exempt from mandatory disclosure. But if a public record is fully exempt from mandatory disclosure, the public-records custodian must provide the requester with a reason the public record is exempt. R.C. 149.43(B)(3).

{¶ 46} There is no exception under the Public Records Act that authorizes a public office or public-records custodian to deny a public-records request on the basis that the requester should ask someone else in the public office or that the

information in the record requested was available elsewhere. Davis failed to rely on any exception under the Public Records Act when he denied Ware's request for the memo. Davis simply told Ware to ask someone else in the public office for the memo and that the information in the memo had been previously emailed to all inmates at the prison.

{¶ 47} Ware made a simple public-records request at a public office. And he submitted that request to the person in the public office who *actually* had distributed the memo to staff at the institution and had sent an email containing similar information to all inmates.

{¶ 48} The lead opinion does not dispute that Ware made a public-records request to the deputy warden of operations of a prison facility for a record and that that request was made to a public office. A response by the public-records custodian that the request should go to someone else in the same public office when the record's release is not prohibited by state or federal law is a denial of a public-records request under the Public Records Act and this court's precedent. Davis owed a duty to Ware to provide him with a copy of the memo he had requested. Because Davis did not provide the record to Ware, he is entitled to statutory damages of $100 for every business day that Davis failed to provide the record, starting from the date Ware filed the mandamus action, up to a maximum of $1,000 for every request that was not properly responded to. R.C. 149.43(C)(2). Therefore, I would order Davis to provide the memo and would award Ware an additional $1,000 in statutory damages.

### The lead opinion is not precedential

{¶ 49} The lead opinion's failure to apply the plain and unambiguous language of the Public Records Act and the lead opinion's reliance instead on a precedent with facts exceedingly different from those at issue here will have broad implications on all public-records requests made in Ohio—if public offices fail to recognize that this case's lead opinion has no precedential value. Article IV,

16

Section 2(A) of the Ohio Constitution states that "[a] majority of the Supreme Court shall be necessary to * * * render a judgment." Only two justices have joined the lead opinion, so anything written therein has no value as precedent. There are four votes only for the bottom-line judgment that Ware is entitled to a writ of mandamus regarding the other three record requests and $3,000 in statutory damages. The consequences of public offices treating the lead opinion as a majority opinion, while perhaps unintended, are readily foreseeable.

### The foreseeable negative implications of the lead opinion

{¶ 50} What could possibly go wrong for public-records requesters under the lead opinion? The answer is everything.

{¶ 51} The lead opinion's application of the *Frank* precedent to this case, a case with dissimilar facts, would improperly expand the reach of *Frank* to all public-records requests. The potential consequences of the lead opinion are easy to predict: if treated as precedent, the decision would thwart the Public Records Act's promise that "open access to government papers is an integral entitlement of the people," *Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 17.

{¶ 52} The Public Records Act is designed for ease of access to public records—once any person makes a request, "all public records shall be promptly prepared and made available for inspection" or copied for the requester "at cost and within a reasonable period of time." R.C. 149.43(B)(1).

{¶ 53} If the lead opinion were controlling, instead of easy access to public records, a public-records requester could anticipate that the public office or public-records custodian could give the requester the runaround, and that would be judicially permissible. This case does not present particularized facts that would limit the reach of the lead opinion in future public-records cases. The lead opinion would give a green light to a public office or public-records custodian to simply refer public-records requesters to another person in the same public office. And

when the denial of a request is challenged, even if this court would hold in a particular case that *Frank* does not apply, the public office or public-records custodian would avoid statutory damages because they would have been able to rely on the lead opinion in good faith for the proposition that a public-records requester can simply be referred to someone else in the public office.

**{¶ 54}** The plain and unambiguous language of the Public Records Act does not support that outcome, and neither does the lead opinion, due to its lack of support by four justices.

**Conclusion**

**{¶ 55}** I concur in the court's judgment granting a writ of mandamus and awarding $3,000 in statutory damages as to the two records Ware sought from Wine and the one record he requested from Ventura. I disagree with the majority's decision to deny Ware a writ of mandamus as to the memo he requested from Davis. Because Davis has failed to provide the memo to Ware and Davis has failed to establish any exception under the Public Records Act to support his denial of Ware's requests, I would grant Ware a writ of mandamus ordering Davis to produce the memo and would award Ware an additional $1,000 in statutory damages. Therefore, I concur in part and dissent in part.

DONNELLY, J., concurs in the foregoing opinion.

———————————

Kimani Ware, pro se.

Dave Yost, Attorney General, and Lori H. Duckworth, Assistant Attorney General, for respondents.

———————————