[Cite as *State ex rel. Ware v. Bratton*, 2024-Ohio-260.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Kimani Ware, :

      Relator, :

                      No. 20AP-347

v. :

                    (REGULAR CALENDAR)

Marc Bratton, [Assistant] Chief Inspector, :
The Office of the Chief Inspector et al.,

      Respondents. :

:

---

D E C I S I O N

Rendered on January 25, 2024

---

**On brief:** *Kimani Ware*, pro se.

**On brief:** *Dave Yost*, Attorney General, *John H. Bates*, and
*Kelly D. Becker*, for respondents.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} Relator, Kimani Ware, who is incarcerated at Trumbull Correctional Institution ("TCI"), has filed an original action in mandamus seeking a writ ordering respondents Marc Bratton, assistant chief inspector of the Ohio Department of Rehabilitation and Correction ("ODRC"), and the ODRC Office of the Chief Inspector to comply with his public records request made pursuant to R.C. 149.43. Relator also seeks statutory damages and court costs due to respondents' alleged failure to respond to his public records request.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact

and conclusions of law, which is appended hereto.[1] The magistrate recommends this court deny relator's request for a writ of mandamus as moot and deny relator's requests for statutory damages and court costs.

{¶ 3} Relator has filed the following three objections to the magistrate's decision:

[I.] The magistrate erred as a matter of law when he rendered that CHIEF INSPECTOR MARC BRATTON was not the person responsible for the requested records.

[II.] The magistrate erred as a matter of law when he denied relator statutory damages on the based on relator did not submit his public records request to the person responsible, and relaying on State ex rel. Mobley v. City of Toledo, 2022-Ohio-3889, supreme case no. 2022-0080.

[III.] The magistrate erred as a matter of law when he determined that chief Mac Bratton did not act in bad faith when he "consciously disregarded relator's records request for eight before voluntarily complying."

(Sic passim.)

{¶ 4} As explained in the magistrate's decision, relator concedes his mandamus claim is moot with respect to his request to inspect the records sought. Therefore, only his claims for statutory damages and court costs remain.

{¶ 5} Relator's first two objections relate to his claim for statutory damages under R.C. 149.43(C)(2). In relevant part, that statute provides that if a public records request is transmitted by hand delivery, electronic submission, or certified mail "to the public office or person responsible for the requested public records * * * the requester shall be entitled to recover * * * statutory damages * * * if a court determines that the public office or the person responsible for public records failed to comply with an obligation in accordance with [R.C. 149.43(B)]." The magistrate concluded relator failed to establish by clear and convincing evidence that he made his request for records to the public office or person

---

[1] Respondents moved to dismiss the complaint in August 2020. That same month, relator moved for default judgment and for summary judgment. A magistrate of this court issued a decision in February 2021 recommending we grant respondents' motion to dismiss and deny relator's motion for summary judgment and motion for default judgment. *State ex rel. Ware v. Bratton*, 10th Dist. No. 20AP-347, 2021-Ohio-3157, ¶ 2. Relator filed objections to the magistrate's decision; we sustained one of relator's objections and remanded the matter to the magistrate for further proceedings. *Id.* at ¶ 10. On remand, the magistrate denied respondents' motion to dismiss, relator's motion for default judgment, and relator's motion for summary judgment before issuing the decision presently before the court on objections.

responsible for the requested record. Relator asserts in his first objection that the magistrate erred by concluding he failed to establish that Bratton was the person responsible for the records he sought. Similarly, in his second objection, relator asserts the magistrate erred by concluding he failed to establish that he had submitted his records request to the person responsible for the records he sought. In support of both objections, relator argues Bratton must be the person responsible for the records he sought because ODRC provided a response on August 12, 2020, after relator filed his mandamus complaint.

{¶ 6} "Where a particular official has a duty imposed by law to oversee public records, that official is 'a person responsible' for those records under R.C. 149.43(B)." *State ex rel. Cincinnati Post v. Schweikert*, 38 Ohio St.3d 170, 174 (1988). The duties of the office of the chief inspector for ODRC are set forth in Ohio Adm.Code 5120-9-30(C). Those duties include administering all aspects of the inmate grievance procedure, supervising institutional inspectors, and submitting certain reports to the director of ODRC. Respondents submitted an affidavit from Bratton averring that the grievance procedure is not the proper method for an inmate to submit a public records request and that each institution had a public records coordinator responsible for receiving and responding to public records requests from inmates. Bratton further averred that the office of the chief inspector was not the custodian of the records relator sought. Respondents also submitted an affidavit from Glenn Booth, administrative assistant to the warden of TCI, attesting that he was the institutional public records coordinator for TCI. Booth averred that relator had not submitted a public records request through the inmate kite system in December 2019, but had submitted 18 other public records requests through the kite system between September 2019 and February 2022. In light of this unrefuted evidence, relator has failed to establish that Bratton and the office of the chief inspector were the custodians of the records relator sought. *See State ex rel. Bloodworth v. Toledo Corr. Inst.*, 6th Dist. No. L-21-1146, 2022-Ohio-346, ¶ 6-8 (dismissing mandamus complaint where respondents' merit brief was supported by an affidavit from one of the respondents averring she was responsible for responding to public records requests for records maintained by Toledo Correctional Institution but was not responsible for public records requests for records maintained by other entities); *State ex rel. Keating v. Skeldon*, 6th Dist. No. L-08-1414, 2009-Ohio-2052, ¶ 8-17 (granting summary judgment in favor of certain respondents who

submitted affidavits averring they were not responsible for the public records sought by the relator).

{¶ 7}    The August 12, 2020 letter responding to relator's complaint was issued by Sarah Pierce, staff counsel to ODRC for records and public information. In the letter, Pierce advised relator it was improper to use the grievance process to submit a public records request and that the proper procedure was to direct such requests to the warden's assistant, who was the public records coordinator for TCI pursuant to ODRC's policies. Pierce further informed relator there were no records responsive to his request and that the request was overbroad and non-specific. The letter included a copy of ODRC's production guidelines for meals containing general information regarding the nutritional content of meals served at ODRC facilities. There was nothing in Pierce's letter suggesting that Bratton was the person responsible for the public records relator sought. Contrary to relator's assertions, the fact that Pierce responded to relator's request on behalf of ODRC does not establish that Bratton or the office of the chief inspector were responsible for the records requested by relator.

{¶ 8}    The magistrate properly concluded that relator failed to establish that Bratton or the office of the chief inspector were the custodians of the records he sought. *See State ex rel. Ware v. Wine*, 169 Ohio St.3d 791, 2022-Ohio-4472, ¶ 9 ("Ware has failed to establish that Davis was the custodian of the record in question or that by referring him to a different employee/office within TCI, Davis denied the request."). Accordingly, we overrule relator's first and second objections.

{¶ 9}    Relator's third objection relates to his claim for court costs under R.C. 149.43(C)(3)(a)(ii). That statute provides that the court shall award court costs if it determines that the public office or person responsible for the public records acted in bad faith by voluntarily making the public records available for the first time after the mandamus action was commenced but before the court issued any order concluding whether or not the public office or person was required to comply with the request. Relator argues the magistrate erred by not finding that Bratton acted in bad faith because eight months passed between December 2019 and Pierce's letter in August 2020.

{¶ 10} The Supreme Court of Ohio has held that "bad faith" involves a dishonest purpose, conscious wrongdoing, or breach of a known duty, and includes actual intent to mislead or deceive. *State ex rel. Horton v. Kilbane*, 167 Ohio St.3d 413, 2022-Ohio-205,

¶ 31. Relator asserts the magistrate erred by concluding there was no showing of bad faith because the magistrate relied on Booth's affidavit. Relator argues his request was submitted to Bratton, not Booth, and therefore it was error to rely on Booth's affidavit in determining whether Bratton acted in bad faith. As explained above, however, both the Bratton and Booth affidavits establish that relator did not direct his request to the individual or office responsible for the records he sought. Therefore, the magistrate properly concluded relator failed to establish that respondents acted in bad faith by not responding to his request until after the mandamus complaint had been filed. Accordingly, we overrule relator's third objection.

{¶ 11} Upon review of the magistrate's decision, an independent review of the record, and due consideration of relator's objections, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We therefore overrule relator's three objections to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Relator is not entitled to a writ of mandamus, statutory damages, or court costs. Accordingly, the requested writ of mandamus is hereby denied.

*Objections overruled;*
*writ of mandamus denied.*

LUPER SCHUSTER and LELAND, JJ., concur.

_____

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

State ex rel. Kimani Ware,                           :

        Relator,                                     :

v.                                                   :                        No.  20AP-347

Marc Bratton, Chief Inspector                        :                        (REGULAR CALENDAR)
The Office of the Chief Inspector et al.,
                                                     :
        Respondents.
                                                     :

---

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on July 21, 2023

---

*Kimani Ware*, pro se.

*Dave Yost*, Attorney General, *Kelly D. Becker,* and *John H. Bates*, for respondents.

---

### IN MANDAMUS

{¶ 12} Relator, Kimani Ware, has filed this original action seeking a writ of mandamus directed to respondents Marc Bratton, assistant chief inspector of the Ohio Department of Rehabilitation and Correction ("ODRC"), and the ODRC Office of the Chief Inspector. Relator seeks statutory damages and an award of court costs due to alleged failures of respondents to comply with Ohio's Public Records Act.

## I. Findings of Fact

{¶ 13} 1. Relator is an inmate incarcerated at the Trumbull Correctional Institution ("TCI") in Leavittsburg, Ohio.

{¶ 14} 2. Respondent Bratton is an assistant chief inspector in the office of the chief inspector, an administrative division of ODRC.

{¶ 15} 3. In December 2019, relator escalated a complaint regarding food service at TCI to a grievance using the ODRC grievance procedure. In an appeal to the office of the chief inspector dated December 15, 2019, relator stated the following:

> Inspecter D. Crawford, claims the my ICR have no merit to prove my allegation, first, the sugar that is being provided to is not for me, because do not have diabetics, and second I cannot buy reals sugar from the commissary, and still the food service contract monitor gave an answer as to why they are not providing real suger or orange juice ! and fortified juice have no health value, the that a proving fact that the medical department can attest to where well at the sub-suger is only for inmates with diabetics! and food menus do not state the number of calories for each meal, at this time, I make a public records request Under to inspect the calorie count for each meal !

(Sic passim.) (Relator's R. at 3.)[2]

{¶ 16} 4. On July 10, 2020, relator filed a complaint seeking a writ of mandamus in the instant case. In his complaint, relator alleged he filed a public records request on December 15, 2019 seeking records documenting the calorie count for all meals served to inmates at TCI.

{¶ 17} 5. On August 12, 2020, Sarah Pierce, staff counsel to ODRC for records and public information, sent relator a letter in response to the filing of the instant mandamus action. Pierce acknowledged relator's allegation in his compliant that he filed a public records request to respondent Bratton on December 15, 2019. Pierce advised relator that ODRC did not have records for the calorie count of each meal served at TCI. Pierce also informed relator that his request was denied for the additional reasons that it was overbroad and failed to include a timeframe for the requested records. Pierce stated: "In an effort to accommodate your interest in the dietary guidelines for meals served at TCI, enclosed is ODRC Production Guidelines dated 4-29-2019. This document references a Master Menu and the average daily nutrient breakdown for menus, including an approved

---

[2] On March 22, 2022, relator filed an evidentiary submission, which was supported by relator's affidavit. Respondents filed an evidentiary submission supported by affidavits on February 28, 2022. For purposes of identification, references to relator's evidentiary submission will be marked as "Relator's R." and references to respondents' evidentiary submission will be marked as "ODRC R."

daily calorie range for male and female inmates used in guiding meal content." (Relator's R. at 8; ODRC R. at 4.) Pierce also stated:

> I want to reiterate the proper procedure to request public records. Ms. Julie Loomis, the Warden's Administrative Assistant, is the Public Records Coordinator for TCI pursuant to ODRC Policy No. 07-ORD-02. You requested, and received, a copy of this policy on June 4, 2020. Documentation also reflects that you followed this procedure on numerous occasions for public records requests prior to receiving the policy on June 4, 2020.
>
> Ms. Loomis is the point person to receive and fulfill public records requests at TCI and you should direct future requests to her. The grievance process is for addressing inmate complaints related to institutional life, including the application of policies, procedures, conditions of confinement, or the actions of institutional staff. It should not be used for submitting public records requests.

(Relator's R. at 8; ODRC R. at 4.) Attached to Pierce's letter was a document captioned "ODRC Production Guidelines," which provided the "average daily nutrient breakdown for the menu" and included a statement that "1 cup of fortified beverage is to be served at breakfast meals." (Relator's R. at 10, 13; ODRC R. at 6, 9.)

{¶ 18} 6. In the instant mandamus action, respondents filed a motion to dismiss on August 12, 2020. Relator filed a motion for default judgment on August 17, 2020 and a motion for summary judgment on August 26, 2020.

{¶ 19} 7. On February 10, 2021, the magistrate previously appointed to this matter rendered a decision granting respondents' motion to dismiss. The magistrate concluded that on the basis of this court's decision in *State ex rel. Moore v. Ohio Dept. of Rehab. and Corr.*, 10th Dist. No. 11AP-90, 2012-Ohio-1070, dismissal was compelled because relator failed to file an inmate grievance affidavit pursuant to R.C. 2969.26(A).

{¶ 20} 8. In a decision rendered on September 14, 2021, this court sustained relator's objection to the February 10, 2021 magistrate's decision. The court noted the holding in *Moore* was narrow and involved a public records request related to an institutional program for inmates directed to an ODRC employee in the correctional institution at which the relator was housed, rather than to a staff member at ODRC's central office. The court found that if respondent Bratton was a staff member at ODRC's central office, the narrow holding in *Moore* would not apply. Because the magistrate did not consider this part of the

respondents' argument, the court remanded the matter to the magistrate with instructions to: (1) determine if respondent Bratton is institutional or ODRC central office staff, and (2) if respondent Bratton is ODRC staff, determine if respondents' response to relator's public records request is excluded from the inmate grievance procedure pursuant to Ohio Adm.Code 5120-9-31(B).

{¶ 21} 9. On September 16, 2021, the magistrate previously appointed to this matter issued an order denying relator's motion for default judgment and ordered respondents to submit further materials in response to the court's September 14, 2021 decision. Respondents filed a response to the September 16, 2021 order on September 27, 2021.

{¶ 22} 10. On December 2, 2021, the previously appointed magistrate issued an order concluding that dismissal for lack of a R.C. 2969.26(A) affidavit was not appropriate based on respondents' submission clarifying that respondent Bratton is central office ODRC staff. The magistrate also denied relator's August 26, 2020 motion for summary judgment.

{¶ 23} 11. In an affidavit dated February 25, 2022, Glenn Booth, administrative assistant for the warden of TCI and institutional public records coordinator pursuant to ODRC Policy 07-ORD-02, stated he was responsible for "manag[ing] the processing of public record requests and respond[ing] to inmate public records requests." (ODRC R. at 28.) Booth stated he was responsible for maintaining a log of all inmate requests for public records. Booth stated that he had no record of relator making a public records request in December 2019. Booth stated relator made a public records request on September 9, 2019 for a copy of the legal mail log for specific dates. Booth stated:

> Inserting a request for a public record in a grievance document is not the proper procedure for requesting a public record. Inmate Ware is fully aware of the proper procedure as he has made 18 requests through the Kite system from September, 2019 through []February 25th 2022, as noted on the Kite Log of my predecessor and my Kite Log. And he made a proper public records request on September 9, 2019.

(ODRC R. at 29.)

{¶ 24} 12. In an affidavit dated February 25, 2022, respondent Bratton stated that as part of his job duties as an assistant chief inspector, he was responsible for appeals to the office of the chief inspector from inmates pursuant to the grievance procedure in Ohio Adm.Code 5120-9-31 and the authority in Ohio Adm.Code 5120-9-30. Respondent Bratton

stated that "[f]iling a complaint through the grievance procedure seeking relief from any aspect of institutional life does not include making a request for records from the institution," and that "[i]t is entirely improper to use the grievance procedure to make a public records request" because "[e]ach institution has a Public Records Coordinator per ODRC Policy No. 07-ORD-02" who is "tasked with receiving and responding to inmate requests for public records." (ODRC R. at 14.) As an exhibit to his affidavit, respondent Bratton attached copies of prior public records requests from relator to ODRC while incarcerated at TCI.

{¶ 25} 13. In his affidavit dated March 2, 2022, relator states that he submitted his public records request "by electronic submission to Ma[r]c Bratton on December 15, 2019." (Relator's R. at 1.)

## II. Discussion and Conclusions of Law

{¶ 26} Relator filed this mandamus action seeking records he requested from respondents. In his merit brief, relator twice concedes this mandamus action is moot with regard to his request to inspect such records. Thus, relator's request for a writ of mandamus should be denied as moot. *See State ex rel. Mobley v. Toledo*, __ Ohio St.3d __, 2022-Ohio-3889, ¶ 15. Despite this concession of mootness, relator asserts entitlement to statutory damages under R.C. 149.43(C)(2) and an award of court costs under R.C. 149.43(C)(3)(a)(ii) due to respondents' alleged failure to timely comply with his records request. *See Mobley* at ¶ 10; *State ex rel. McDougald v. Greene*, 161 Ohio St.3d 130, 2020-Ohio-3686, ¶ 13; *State ex rel. Kesterson v. Kent State Univ.*, 156 Ohio St.3d 13, 2018-Ohio-5108, ¶ 20-22 (awarding statutory damages under R.C. 149.43(C) though mandamus claim for public records was moot).

## A. ODRC Office of the Chief Inspector

{¶ 27} "R.C. Chapter 5120 grants broad powers to [ODRC] regarding all aspects of the Ohio prison system." *O'Neal v. State*, 10th Dist. No. 19AP-260, 2020-Ohio-506, ¶ 35. Among other powers, the General Assembly has authorized ODRC to "maintain, operate, manage, and govern all state institutions for the custody, control, training, and rehabilitation of persons convicted of crime and sentenced to correctional institutions." R.C. 5120.05. With regard to the authority of the director of ODRC, R.C. 5120.01 provides that "[a]ll duties conferred on the various divisions and institutions of the department by

law or by order of the director shall be performed under the rules and regulations that the director prescribes and shall be under the director's control." R.C. 5120.06 provides the director with the authority to establish and prescribe the duties and powers of offices, divisions, bureaus, and other administrative units within ODRC. Furthermore, R.C. 5120.42 provides that ODRC "shall make rules for the proper execution of its powers."

{¶ 28} Pursuant to this broad statutory authority, ODRC established the office of the chief inspector and prescribed the powers and duties of the office in Ohio Adm.Code 5120-9-30, which provides in pertinent part:

> The chief inspector and designee(s) have the authority and responsibility to:
>
> (1) Administer all aspects of the grievance procedure for inmates;
>
> (2) Render dispositions on inmate grievance appeals;
>
> (3) Render dispositions on grievances against the wardens and/or inspectors of institutional services;
>
> (4) Participate in the selection process of institutional inspectors, assistant inspectors, investigators, assistant investigators and accreditation coordinators, including screening, interviewing and selection;
>
> (5) Functionally supervise institutional inspectors, assistant inspectors, investigators, assistant investigators and accreditation coordinators; including participation in annual performance reviews for such positions;
>
> (6) Initiate and supervise continuous training for departmental staff to maintain an active awareness and understanding of the grievance procedure for inmates and prepare a lesson plan for such purpose;
>
> (7) Ensure that all laws, rules, and regulations of the department and subordinate facilities are being followed and applied fairly throughout the system and report to the director or assistant director any noncompliance including recommendations for corrective action;
>
> (8) Administer and supervise the internal and external audit procedures;
>
> (9) Monitor and provide input relative to any proposed new or revised administrative rules, policies or protocols of the department;
>
> (10) Coordinate the revision, dissemination, annual review and maintenance of departmental policies;

(11) Monitor, coordinate, conduct, and/or initiate internal administrative investigations;

(12) Submit to the director and the chairperson of the correctional institution inspection committee an annual report, which shall include, from all institutions, statistical information as to the number and nature of all inmate grievances processed during the report period, their disposition and the status of all pending grievances; and

(13) Perform any other duties and responsibilities established by departmental policy and/or as directed or approved by the director or assistant director.

Ohio Adm.Code 5120-9-30(C). ODRC adopted an administrative rule governing the inmate grievance procedure under Ohio Adm. Code 5120-9-31, which provides in pertinent part:

(A) The department of rehabilitation and correction (DRC) shall provide inmates with access to an inmate grievance procedure. This procedure is designed to address inmate complaints related to any aspect of institutional life that directly and personally affects the grievant. This may include complaints regarding the application of policies, procedures, conditions of confinement, or the actions of institutional staff.

(B) The inmate grievance procedure will not serve as an additional or substitute appeal process for hearing officer decisions, rules infraction board decisions or those issues or actions which already include a separate appeal mechanism beyond the institution level or those issues or actions where a separate administrative rule specifically indicates there is no appeal or where a final decision has been rendered by operation support center staff or a managing officer. Other matters that are not grievable include complaints related to legislative actions, the Ohio Revised Code, Administrative Code, ODRC policies, and decisions of the adult parole authority, judicial proceedings and sentencing or complaints whose subject matter is exclusively within the jurisdiction of the courts or other agencies. Complaints which present allegations which fall, in part, within the scope of paragraph (A) of this rule and in part within this paragraph will be considered to the extent they are not excluded under this paragraph.

Ohio Adm.Code 5120-9-31.

## B. Public-Records Mandamus Cases under Ohio Law

{¶ 29} Ohio's Public Records Act, which is codified at R.C. 149.43, requires that "requestors have full access to public records unless the requested records fall within one of the exceptions specifically enumerated in the act." *State ex rel. Fair Housing Opportunities of Northwest Ohio v. Ohio Fair Plan*, 10th Dist. No. 20AP-351, 2022-Ohio-385, ¶ 7, citing *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency*, 88 Ohio St.3d 166, 170 (2000). "The Public Records Act reflects [Ohio's] policy that 'open government serves the public interest and our democratic system.' " *State ex rel. Glasgow v. Jones*, 119 Ohio St.3d 391, 2008-Ohio-4788, ¶ 13, quoting *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, ¶ 20.

{¶ 30} For purposes of R.C. 149.43, "public records" are defined as "records kept by any public office, including, but not limited to, state, county, city, village, township, and school district units, and records pertaining to the delivery of educational services by an alternative school in this state kept by the nonprofit or for-profit entity operating the alternative school pursuant to [R.C.] 3313.533." R.C. 149.43(A)(1).[3] Pursuant to R.C. 149.011(A), a "public office" includes "any state agency, public institution, political subdivision, or other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government." Pursuant to R.C. 149.011(D), a "public official" includes "all officers, employees, or duly authorized representatives or agents of a public office."

{¶ 31} Mandamus is an appropriate remedy to compel compliance with the Public Records Act. *State ex rel. Physicians Comm. for Responsible Medicine v. Bd. of Trustees of Ohio State Univ.*, 108 Ohio St.3d 288, 2006-Ohio-903, ¶ 6; R.C. 149.43(C)(1)(b). To prevail on a mandamus claim in a public-records case, a party must establish a clear legal right to the requested relief and a corresponding clear legal duty on the part of the respondent to provide such relief. *State ex rel. Ellis v. Maple Hts. Police Dept.*, 158 Ohio St.3d 25, 2019-Ohio-4137, ¶ 5. The relator bears the burden of establishing entitlement to a writ of

---

[3] R.C. 149.43 has been amended several times since relator filed his original records request, though without changes material to this action. References to the statutory text in this decision reflect the version of the statute at the time relator made his request. *State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, ¶ 11, citing *State ex rel. Kesterson v. Kent State Univ.*, 156 Ohio St.3d 13, 2018-Ohio-5108, ¶ 11, fn. 1 (applying the version of the statute in effect at the time the records request was made with regard to a request for statutory damages under R.C. 149.43(C)(2)).

mandamus by clear and convincing evidence. *State ex rel. Ware v. Crawford*, 167 Ohio St.3d 453, 2022-Ohio-295, ¶ 14. "Clear and convincing evidence is 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, ¶ 18, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 32} R.C. 149.43(C)(2), pertaining to statutory damages for a failure to comply with the public records obligations under R.C. 149.43(B), provides in relevant part:

> If a requester transmits a written request by hand delivery, electronic submission, or certified mail to inspect or receive copies of any public record in a manner that fairly describes the public record or class of public records to the public office or person responsible for the requested public records, except as otherwise provided in this section, the requester shall be entitled to recover the amount of statutory damages set forth in this division if a court determines that the public office or the person responsible for public records failed to comply with an obligation in accordance with division (B) of this section.

> The amount of statutory damages shall be fixed at one hundred dollars for each business day during which the public office or person responsible for the requested public records failed to comply with an obligation in accordance with division (B) of this section, beginning with the day on which the requester files a mandamus action to recover statutory damages, up to a maximum of one thousand dollars. The award of statutory damages shall not be construed as a penalty, but as compensation for injury arising from lost use of the requested information. The existence of this injury shall be conclusively presumed. The award of statutory damages shall be in addition to all other remedies authorized by this section.

R.C. 149.43(C)(2). R.C. 149.43(C)(3)(a)(ii), pertaining to an award of court costs, provides that "[i]f the court makes a determination described in [R.C. 149.43(C)(3)(b)(iii)], the court shall determine and award to the relator all court costs, which shall be construed as remedial and not punitive." R.C. 149.43(C)(3)(b)(iii) provides: "The public office or the person responsible for the public records acted in bad faith when the office or person voluntarily made the public records available to the relator for the first time after the relator commenced the mandamus action, but before the court issued any order

concluding whether or not the public office or person was required to comply with [R.C. 149.43(B)]."

**C. Application**

{¶ 33} Relator argues entitlement to statutory damages under R.C. 149.43(C)(2) because respondents failed in their duty to make the requested records available for inspection within a reasonable time, only responding after relator filed the instant action in mandamus. Respondents argue it is clear from the circumstances surrounding this case that relator did not actually want the records he requested, but instead wanted the request to be denied in order to receive statutory damages under R.C. 149.43(C). Respondents also argue relator failed to submit the public records request to the proper party. While relator argues he delivered his public records request by electronic submission, he fails to establish by clear and convincing evidence that he made the request "to the public office or person responsible for the requested public records." R.C. 149.43(C)(2). *See Mobley*, 2022-Ohio-3889, at ¶ 11 (finding that the party requesting statutory damages under R.C. 149.43(C)(2) bore the burden to demonstrate by clear and convincing evidence that the responding party failed to comply with an obligation under R.C. 149.43).

{¶ 34} Here, the record reflects that prior to his December 2019 request to respondents for the records at issue in this case, relator successfully sought public records from ODRC through the kite system.[4] Booth, a public records coordinator responsible for receiving and responding to public records requests at TCI, stated that there was no record of relator making a public records request in December 2019. Relator was directed by Pierce in her August 12, 2020 letter to the correct institutional employee responsible for receiving and responding to public records requests. Respondent Bratton avers that neither he nor the office of the chief inspector served as the custodian of the requested record. Furthermore, nothing in Ohio Adm.Code 5120-9-30 or Ohio Adm.Code 5120-9-31 indicates that the office of the chief inspector or an individual inspector within such office is a public office or person responsible for the requested public records. Relator provides no evidence or authority to establish that either respondent Bratton or the office of the chief inspector was responsible for the requested records.

---

[4] A "kite" is a communication "written by an inmate to a member of the prison staff and is 'a means for inmates to contact staff members inside [an] institution.' " *State ex rel. Martin v. Greene*, 156 Ohio St.3d 482, 2019-Ohio-1827, ¶ 3, fn. 1, quoting *State v. Elmore*, 5th Dist. No. 16CA52, 2017-Ohio-1472, ¶ 15.

{¶ 35} As a result, relator has failed to establish by clear and convincing evidence that he made his request for records to the public office or person responsible for the requested record as required by R.C. 149.43(C)(2). Therefore, relator's request for statutory damages pursuant to R.C. 149.43(C)(2) must be denied. *See State ex rel. Ware v. Wine*, 169 Ohio St.3d 791, 2022-Ohio-4472, ¶ 9 (denying relator's request for statutory damages pursuant to R.C. 149.43(C)(2) with regard to a particular record requested because relator "failed to establish that Davis was the custodian of the record in question or that by referring him to a different employee/office within TCI, Davis denied the request"); *Mobley* at ¶ 14 (finding the party seeking statutory damages under R.C. 149.43(C)(2) had not "satisfied his heightened burden to show entitlement to statutory damages" because the record did not contain clear and convincing evidence that delivery of the request for records was accomplished by one of the methods authorized in R.C. 149.43(C)(2)).

{¶ 36} Finally, relator argues he is entitled to an award of court costs under R.C. 149.43(C)(3)(a)(ii). R.C. 149.43(C)(3)(a)(ii) provides that "[i]f the court makes a determination described in [R.C. 149.43(C)(3)(b)(iii)], the court shall determine and award to the relator all court costs, which shall be construed as remedial and not punitive." R.C. 149.43(C)(3)(b)(iii) provides: "The public office or the person responsible for the public records acted in bad faith when the office or person voluntarily made the public records available to the relator for the first time after the relator commenced the mandamus action, but before the court issued any order concluding whether or not the public office or person was required to comply with [R.C. 149.43(B)]." With regard to making a finding of bad faith, the Supreme Court of Ohio has stated the following:

> " 'The term "bad faith" generally implies something more than bad judgment or negligence.' " *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 81, quoting *State v. Tate*, 5th Dist. No. 07 CA 55, 2008-Ohio-3759, ¶ 13. Bad faith " ' "imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." ' " *Id.*, quoting *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276 (1983), quoting *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148 (1962), paragraph two of the syllabus, *overruled on other grounds*, *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552 (1994), paragraph one of the syllabus.

*McDougald*, 2020-Ohio-3686, at ¶ 26. *See State ex rel. Horton v. Kilbane*, 167 Ohio St.3d 413, 2022-Ohio-205, ¶ 31.

{¶ 37} Here, relator asserts this court should find bad faith because respondent Bratton "consciously disregarded relator's public records request for eight months before voluntarily complying." (Relator's Brief at 5.) Relator's argument is unavailing. Nothing in the record suggests respondents acted in bad faith. As previously noted, Pierce attempted to direct relator to the correct institutional employee responsible for receiving and responding to public records requests. Considering relator's failure to establish that his request for records was made to the party responsible for such records, the magistrate cannot conclude that respondents' delay in informing relator that there are no records responsive to his request and providing the ODRC Production Guidelines document demonstrates bad faith under the standard articulated in *McDougald*. As a result, the magistrate recommends denying relator's request for an award of court costs under R.C. 149.43(C)(3)(a)(ii).

## D. Conclusion

{¶ 38} Accordingly, it is the decision and recommendation of the magistrate that relator's request for a writ of mandamus should be denied as moot, relator's request for statutory damages pursuant to R.C. 149.43(C)(2) be denied, and relator's request for an award of court costs pursuant to R.C. 149.43(C)(3)(a)(ii) be denied.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.