[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. McDougald v. Sehlmeyer*, Slip Opinion No. 2020-Ohio-3927.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3927

THE STATE EX REL. MCDOUGALD *v.* SEHLMEYER.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. McDougald v. Sehlmeyer*, Slip Opinion No. 2020-Ohio-3927.]

*Mandamus—Public Records Act—There is no justification for granting a writ of mandamus to compel a public-records custodian to allow an in-person inspection of requested records, especially when the public-records custodian has offered to make the records available by other means.*

(No. 2019-1212—Submitted April 7, 2020—Decided August 5, 2020.)

IN MANDAMUS.

————————

**Per Curiam.**

{¶ 1} Relator, Jerone McDougald, seeks a writ of mandamus to compel respondent, Sonrisa Sehlmeyer, to produce documents pursuant to a public-records request. Also pending is McDougald's motion to submit this case to mediation.

For the reasons set forth herein, we deny his motion for mediation and his requests for a writ of mandamus, statutory damages, and court costs.

## I. Background

{¶ 2} On August 13, 2019, McDougald, an inmate at the Toledo Correctional Institution, sent a public-records request to Sehlmeyer, the warden's administrative assistant. He asked to *inspect* the following records:

(1) Ms. M. Manteuffel training course files.

(2) Ms. M. Manteuffel position description.

(3) Ms. M. Manteuffel forms documenting receipt of office policies, directives, etc.

(4) Ms. M. Manteuffel forms documenting job classification changes.

{¶ 3} One week later, Sehlmeyer responded to McDougald's request with a handwritten notation indicating the number of pages each requested record consisted of and stating, "The total for this request would be $1.80.[1] Please send a cash slip for these records." (Footnote added.) Sehlmeyer's response provided no further explanation. McDougald understood this response as a denial of his request to inspect the records in person.

{¶ 4} According to Sehlmeyer's affidavit that was submitted as evidence in this case, after McDougald received Sehlmeyer's response, he "never followed-up this request with any indication that he was still seeking to inspect these documents," as opposed to receiving copies. Nor did he ever send Sehlmeyer a

---

1. Sehlmeyer calculated this amount by totaling the number of pages in the various requests (36) and multiplying that number by $.05.

cash slip. Sehlmeyer also checked McDougald's inmate account and determined that he did not have sufficient funds to pay the cost of the copies.

{¶ 5} On September 3, 2019, McDougald filed the present complaint, asking this court to issue a writ of mandamus compelling Sehlmeyer to allow him to inspect the records. He also requested an award of statutory damages in the amount of $1,000 plus court costs. This court denied Sehlmeyer's motion to dismiss and issued an alternative writ and set a briefing schedule. 157 Ohio St.3d 1516, 2019-Ohio-5289, 136 N.E.3d. 517.

{¶ 6} The parties have filed merit briefs and submitted evidence.

## II. Analysis

### A. *The motion for mediation*

{¶ 7} McDougald has filed a motion asking to submit this case to mediation. S.Ct.Prac.R. 4.02 authorizes a party to "file a motion to refer a case to mediation pursuant to S.Ct.Prac.R. 19.01." Under S.Ct.Prac.R. 19.01(A)(1), we may refer to mediation "any civil case that the Supreme Court deems appropriate." This case is not appropriate for mediation.

{¶ 8} McDougald's motion for mediation consists of a single sentence, in which he asks us to refer the case to mediation "due to the circumstances and facts of this case." The motion does not explain what these facts and circumstances are and does not identify any dispute that mediation might help to resolve. As shown below, this case does not involve an ambiguous or overly broad public-records request that a mediator could help to narrow or clarify. The issue in this case is whether McDougald, an inmate in a maximum-security prison, has a statutory right to personally inspect public records (as opposed to receiving copies of those records). Mediation is unlikely to help the parties resolve that disagreement.

{¶ 9} We deny McDougald's motion to refer this case to mediation.

### B. The merits of McDougald's public-records claim

{¶ 10} Ohio's Public Records Act, R.C. 149.43, requires a public office, upon request, to promptly make public records available for inspection or to provide copies of the records within a reasonable period of time, R.C. 149.43(B)(1). A "public record" is a record "kept by any public office." R.C. 149.43(A)(1). Mandamus is an appropriate remedy by which to compel compliance with R.C. 149.43. *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6; R.C. 149.43(C)(1)(b).

{¶ 11} To be entitled to the writ, McDougald must demonstrate that he has a clear legal right to the requested relief and that Sehlmeyer has a clear legal duty to provide that relief. *State ex rel. Cincinnati Enquirer v. Sage*, 142 Ohio St.3d 392, 2015-Ohio-974, 31 N.E.3d 616, ¶ 10. McDougald must prove his right to relief by clear and convincing evidence. *Id.* However, Ohio's Public Records Act "is construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records." *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 376, 662 N.E.2d 334 (1996).

{¶ 12} In his merit brief, McDougald makes three points. First, he argues that the requested documents are subject to inspection under R.C. 149.43. Second, he argues that Sehlmeyer may not condition his right to *inspect* the records on the prepayment of any fee. And third, he argues that his status as an incarcerated person does not restrict his rights under R.C. 149.43.

{¶ 13} In response, Sehlmeyer does not dispute that the requested documents are public records. But she *does* deny conditioning McDougald's right to inspect the records on the payment of a fee. According to Sehlmeyer, she would have been justified in denying McDougald's request to inspect the records outright. Instead, she "offered an appropriate alternative to give [McDougald] copies of the documents at an appropriate cost."

4

{¶ 14} " '[T]he right of inspection, as opposed to the right to request copies, is not conditioned on the payment of any fee under R.C. 149.43.' " *State ex rel. Penland v. Ohio Dept. of Rehab. & Corr.*, 158 Ohio St.3d 15, 2019-Ohio-4130, 139 N.E.3d 862, ¶ 12, quoting *State ex rel. Warren Newspapers, Inc. v. Hutson*, 70 Ohio St.3d 619, 624, 640 N.E.2d 174 (1994). However, the duty to allow inspection of public records "is not absolute." *State ex rel. Nelson v. Fuerst*, 66 Ohio St.3d 47, 48, 607 N.E.2d 836 (1993). For example, permitting an inmate to personally inspect records is not required when doing so would create security issues, unreasonably interfere with the officials' discharge of their duties, and violate prison rules. *State ex rel. Dehler v. Mohr*, 129 Ohio St.3d 37, 2011-Ohio-959, 950 N.E.2d 156, ¶ 2. Sehlmeyer suggests that that rationale for not permitting personal inspection of the records applies here because McDougald is an inmate in a maximum-security prison.

{¶ 15} " 'With respect to penal institutions, prison administrators must be accorded deference in adopting * * * policies and practices to preserve internal order and to maintain institutional security.' " (Ellipsis in *Dehler*.) *Id.*, quoting *Briscoe v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 02AP-1109, 2003-Ohio-3533, ¶ 16. McDougald has not identified any instance in which a court has overruled the decision of prison officials and ordered them to permit an inmate to inspect records *personally*. Indeed, precluding maximum-security inmates from conducting in-person inspections of prison records will very often be sensible. There is no justification for granting a writ of mandamus to compel Sehlmeyer to allow an in-person inspection, especially when, as here, the institution has offered to make the records available by other means.

{¶ 16} We deny the request for a writ of mandamus.

### C. Statutory damages

{¶ 17} In his merit brief, McDougald demands an award of statutory damages in the amount of $1,000. A person requesting public records is entitled to

an award of statutory damages "if a court determines that the public office or the person responsible for [the] public records failed to comply with an obligation in accordance with division (B) of this section." R.C. 149.43(C)(2). However, a requester will qualify for statutory damages only if he "transmits a written request [for the public records] by hand delivery, electronic submission, or certified mail * * * to the public office or person responsible for the requested public records." *Id*. The party seeking statutory damages must prove the method of delivery by clear and convincing evidence. *State ex rel. Martin v. Greene*, 156 Ohio St.3d 482, 2019-Ohio-1827, 129 N.E.3d 419, ¶ 9. McDougald delivered his public-records request through the prison kite system. We have recently held that a prison kite is not one of the delivery methods identified in R.C. 149.43(C)(2), and delivering a request by this method therefore does not allow a requester to ask for statutory damages. *State ex rel. McDougald v. Greene*, __ Ohio St.3d __, 2020-Ohio-3686, __ N.E.3d __, ¶ 15-18. We deny the request for statutory damages.

*D. Court costs*

{¶ 18} In his complaint, McDougald requests an award of court costs. R.C. 149.43(C)(3)(a)(i) authorizes a court to award court costs when it has granted a writ of mandamus. Alternatively, R.C. 149.43(C)(3)(a)(ii) allows a court to award court costs when an official provides records for the first time after a complaint for a writ of mandamus is filed but before the court issues a writ and the court determines that the official acted in bad faith. Neither situation is applicable to the present set of facts, and we therefore deny McDougald's request for an award of court costs.

**III. Conclusion**

{¶ 19} For the reasons stated, we deny the motion for mediation and deny the requests for a writ of mandamus, for statutory damages, and for court costs.

Writ denied.

O'CONNOR, C.J., and FISCHER, DEWINE, and DONNELLY, JJ., concur.

STEWART, J., concurs in judgment only and would find that a one-week response time does not constitute an unreasonable delay and would therefore deny statutory damages.

FRENCH, J., concurs in part and dissents in part, with an opinion.

KENNEDY, J., dissents, with an opinion.

_____

**FRENCH, J., concurring in part and dissenting in part.**

{¶ 20} I agree with the dissenting opinion's conclusion that relator, Jerone McDougald, is entitled to inspect the requested records because respondent, Sonrisa Sehlmeyer, failed to support the denial of McDougald's request with any reasoning or evidence. But I agree with the majority's decision to deny McDougald's request for statutory damages because we have concluded that delivery of a public-records request by a prison's kite system does not satisfy any of the delivery requirements in R.C. 149.43(C)(2). *State ex rel. McDougald v. Greene*, __ Ohio St.3d __, 2020-Ohio-3686, __ N.E.3d __, ¶ 15-18. I therefore concur in part and dissent in part.

_____

**KENNEDY, J., dissenting.**

{¶ 21} I dissent because I must. Sonrisa Sehlmeyer, the warden's administrative assistant at the Toledo Correctional Institution ("TCI"), may well have had good reasons for refusing to allow relator, Jerone McDougald, to review in person the records he sought to inspect. But because she failed to provide any reasoning to McDougald or this court regarding her refusal, I would grant a writ of mandamus and order Sehlmeyer to allow McDougald to inspect the records at issue in this case. I would also award McDougald $1,000 in statutory damages.

*Factual and procedural background*

{¶ 22} McDougald, who is incarcerated at TCI, submitted a public-records request to Sehlmeyer on August 13, 2019, asking to inspect specific records. Sehlmeyer responded on August 20, 2019. But Sehlmeyer's response ignored

7

McDougald's actual request—instead of addressing his desire to *inspect* the records, she responded as though he had sought *copies* of the records. She wrote, "The total for this request would be $1.80. Please send a cash slip for these records." On that same day, McDougald submitted another public-records request that was identical to his first one. Sehlmeyer never responded to that second public-records request. Sehlmeyer does not suggest that her response to McDougald was anything other than a denial of his request to inspect the records. That denial is at the heart of this case.

{¶ 23} On September 3, 2019, McDougald filed a complaint for a writ of mandamus in this court asking that we order Sehlmeyer to allow him to inspect the records. Sehlmeyer filed a motion to dismiss. This court denied that motion, issued an alternative writ, and set a schedule for the parties to file briefs and submit evidence in accordance with S.Ct.Prac.R. 12.05. 157 Ohio St.3d 1516, 2019-Ohio-5289, 136 N.E.3d 517.

{¶ 24} In Sehlmeyer's affidavit, which was filed as evidence in this case, she states that she sent a response to McDougald's first public-records request setting forth the price for the copies of the requested documents. She does not state that she denied McDougald's request to inspect the records for security reasons. She does state in her affidavit that she considers the following factors when responding to public-records requests for the inspection of records:

> While evaluating inmate record requests for inspection versus copies, I consider, among other factors, the inmate's security classification, housing assignment, and relevant rule violations committed by the inmate which would pertain to their ability to view the documents requested. Regardless, to aid their public records requests, we nevertheless permit inmates to obtain copies of these documents of which they seek for inspection.

{¶ 25} But Sehlmeyer does not state that she considered those factors before she denied McDougald's request to inspect certain documents. She does not mention McDougald's security classification, housing assignment, or any rule violations that may have prevented him from having access to the records. Nor does she indicate that her response was simply a misunderstanding, that she thought McDougald was asking for copies of records rather than to inspect the actual records. Therefore, her affidavit confirms that she purposefully denied McDougald access to the records without stating a reason.

*Limiting an incarcerated individual's ability to inspect an institution's records*

{¶ 26} In other cases involving the denial of an inmate's request to inspect a prison's records, "the prison officials submitted evidence that granting that request might have unreasonably interfered with the discharge of their duties." *State ex rel. Dehler v. Spatny*, 127 Ohio St.3d 312, 2010-Ohio-5711, 939 N.E.2d 831, ¶ 5. The majority cites *State ex rel. Dehler v. Mohr*, 129 Ohio St.3d 37, 2011-Ohio-959, 950 N.E.2d 156, ¶ 2, as support for the statement that "permitting an inmate to personally inspect records is not required when doing so would create security issues, unreasonably interfere with the officials' discharge of their duties, and violate prison rules." Majority opinion at ¶ 14. In *Mohr*, this court affirmed a court of appeals' opinion that contained specific findings regarding an inmate's request to review a prison's purchase orders for peanut butter. The court of appeals stated:

> Apparently, some records about peanut butter purchases for TCI do exist, but the practical aspects of providing such records to Dehler made the provision of the records challenging at best. With Dehler's transfer to Mansfield Correctional Institution, providing

the records has transitioned from challenging at best to close to impossible.

While Dehler was housed at TCI, the institution could only provide the records requested by duplicating a large number of documents or by providing Dehler extended access to the original documents. The staffing levels at TCI were such that the warden there could not assign a correctional officer to full-time duty of watching over Dehler's shoulder while Dehler waded through all the purchase orders regarding food for TCI to find the orders regarding peanut butter purchases.

The cost of duplicating such a huge number of food purchase documents was prohibitive.

Further, Dehler and all other inmates are only allowed to store a very limited number of items in their cells. TCI, with the overcrowding of inmates in Ohio being what it is, could not set aside a separate room or rooms to house the duplicated documents until Dehler could make a complete review.

*State ex rel. Dehler v. Collins*, 10th Dist. Franklin No. 09AP-703, 2010-Ohio-5436, ¶ 10-13.

*Sehlmeyer provides no reason to limit McDougald's access*

*to the records in this case*

{¶ 27} In contrast, in this case, Sehlmeyer offers no evidence that McDougald's request was too difficult for TCI to respond to, or that allowing him to inspect the records caused a specific threat based upon his record in the institution. She determined that the records McDougald sought totaled only 36 pages, and she submitted no evidence of how allowing McDougald to view that

many pages in his cell or elsewhere would overly burden the institution. She merely denied McDougald's request without any explanation.

{¶ 28} Pursuant to R.C. 149.43(B)(3), when a public office denies a public-records request in part or in whole, "the public office or the person responsible for the requested public record shall provide the requester with an explanation, including legal authority, setting forth why the request was denied." If a mandamus action is filed against the public office, the public office may rely on additional reasons or legal authority in defending the action. *Id*. Sehlmeyer, however, has offered no specific reason for her denial of McDougald's request. If anything, setting forth the list of factors she should consider when responding to an inmate's public-records request without a discussion of their relevance in this case is an admission that she failed to apply them to McDougald's request. Sehlmeyer has not asserted that she denied McDougald's public-records request because of security concerns. Accordingly, this court should grant McDougald a writ of mandamus and order Sehlmeyer to allow him to inspect the 36 pages of records he requested access to.

*Statutory damages*

{¶ 29} The majority opinion denies McDougald's request for statutory damages. I would hold that McDougald meets the statutory criteria for an award of statutory damages. To be eligible for such an award, the requester must transmit the public-records request by "hand delivery, electronic submission, or certified mail." R.C. 149.43(C)(2).[2] "Hand delivery" is not defined in the statute. There is no dispute in this case that McDougald made his public-records request through the prison's "kite" system. "A 'kite' is written by an inmate to a member of the prison

---

2. Public-records requests are governed by the version of R.C. 149.43 that was in effect at the time that the request was made. *State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179, ¶ 11. The version of the Public Records Act that governs McDougald's requests, R.C. 149.43 as amended by 2018 Sub.H.B. No. 425, took effect in April 2019.

staff and is 'a means for inmates to contact staff members inside [an] institution.' " *State ex rel. Martin v. Greene*, 156 Ohio St.3d 482, 2019-Ohio-1827, 129 N.E.3d 419, ¶ 3, fn. 1, quoting *State v. Elmore*, 5th Dist. Richland No. 16CA52, 2017-Ohio-1472, ¶ 15. Because I would hold that a public-records request made by kite constitutes hand delivery, I would hold that McDougald is eligible to receive statutory damages. *See State ex rel. McDougald v. Greene*, ___ Ohio St.3d. ___, 2020-Ohio-3686, ___ N.E.3d ___, ¶ 60 (Kennedy, J., dissenting).

{¶ 30} Pursuant to R.C. 149.43(C)(2), a person who makes a public-records request "shall be entitled to recover * * * statutory damages * * * if a court determines that the public office or the person responsible for public records failed to comply with an obligation in accordance with" R.C. 149.43(B). R.C. 149.43(B)(1) states that "all public records responsive to the request shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours." And when a public office denies a public-records request, it must inform the requester of that denial and provide the reasons for the denial. R.C. 149.43(B)(1) and (3); *see also State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179, ¶ 11.

{¶ 31} In *Cordell*, this court noted that even when a public office has no responsive records to produce, its failure to respond in a timely manner makes it liable for statutory damages. Whether the public office complied with its statutory duty to respond within a reasonable period of time " 'depends upon all of the pertinent facts and circumstances.' " *Id*. at ¶ 12, quoting *State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, ¶ 10. The requester "bears the burden of demonstrating that the [public office's] response to [the] public-records requests was unreasonably delayed." *Id.*, citing *State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274, ¶ 44.

{¶ 32} McDougald has proved that Sehlmeyer's response to his public-records request in this case was unreasonably delayed. McDougald submitted his public-records request on August 13, 2019, and he has yet to learn from Sehlmeyer why he was denied the ability to inspect the records.

{¶ 33} Statutory damages are calculated at the rate of $100 "for each business day during which the public office or person responsible for the requested public records failed" to comply with an obligation under R.C. 149.43(B), starting from the date on which the requester filed a complaint for a writ of mandamus, with a maximum award of $1,000. R.C. 149.43(C)(2).

{¶ 34} A court may reduce or decline to award statutory damages if it finds that based on the law that existed at the time of the alleged conduct that allegedly constitutes a failure to comply with R.C. 149.43, "a well-informed public office * * * reasonably would believe that the conduct * * * did not constitute a failure to comply * * * with [R.C. 149.43(B)], R.C. 149.43(C)(2)(a), and that "a well-informed public office * * * reasonably would believe that the conduct * * * of the public office * * * would serve the public policy that underlies the authority that is asserted as permitting that conduct or threatened conduct," R.C. 149.43(C)(2)(b). Neither of those factors are relevant in this case. Without any knowledge of Sehlmeyer's reasons for denying McDougald access to the records, we cannot know whether she legitimately withheld access from McDougald. McDougald sought to personally inspect various public records, and Sehlmeyer's reply setting forth the cost of copies charges was nonresponsive to that request. A well-informed public office would not reasonably believe that a denial of a public-records request without an explanation of the denial would not constitute a failure to comply with R.C. 149.43(B). Therefore, given that the above factors do not apply here and that more than ten business days have passed since McDougald filed his complaint, I would award McDougald $1,000 in statutory damages.

*The potential impact of this case is far-reaching*

{¶ 35} Sehlmeyer gives the majority so little to work with here that its holding is based on a series of attempted justifications rather than on the plain language of R.C. 149.43 and the caselaw associated with R.C. 149.43. First, the majority faults McDougald for not identifying "any instance in which a court has overruled the decision of prison officials and ordered them to permit an inmate to inspect records *personally*." (Emphasis sic.) Majority opinion at ¶ 15. This is a peculiar approach. There is a dearth of cases involving prison officials' denials of requests from incarcerated individuals for in-person inspection of public records. But in an underdeveloped area of the law, the majority decides that because this court has never overruled a prison official's decision, we do not need to look into the particular facts of *this* case. The majority implies that because in cases such as *State ex rel. Dehler v. Spatny,* 127 Ohio St.3d 312, 2010-Ohio-5711, 939 N.E.2d 831, ¶ 5, and *State ex rel. Dehler v. Mohr,* 129 Ohio St.3d 37, 2011-Ohio-959, 950 N.E.2d 156, ¶ 2, the prison officials presented reasoning to support their decisions not to allow access, Sehlmeyer is absolved of producing similar evidence to support her decision not to allow access in this case. Under the majority's reasoning, there will never be an instance in which an incarcerated individual will be able to overcome a public office's decision to deny him the ability to inspect a public record because, after all, it's never been done before.

{¶ 36} Second, the majority makes the broad statement that "precluding maximum-security inmates from conducting in-person inspections of prison records will very often be sensible." Majority opinion at ¶ 15. But being sensible in the abstract is not enough. Sehlmeyer has done nothing to inform this court that her denial of McDougald's inspection request was necessary in *this* case. The majority's statement creates a presumption that a blanket refusal of any request from an individual who is incarcerated in a maximum-security facility to inspect a public record in person meets the requirements of R.C. 149.43. Does this

presumption apply to reports documenting the excessive use of force against incarcerated individuals—is it sensible that an incarcerated individual may access such a report only if he is not classified as a maximum-security risk or he has enough money in his inmate account to purchase a copy? Does poverty become an automatic bar to a maximum-security inmate's ability to review public records? If a maximum-security inmate has no money, is it sensible that he cannot review his records documenting incidents involving an excessive use of force against him? Or must the institution prove that its denial of an inmate's request to inspect a record was appropriate because a grant of the request would actually have unreasonably interfered with the discharge of the duties of the institution, as this court stated in *Spatny*, 127 Ohio St.3d 312, 2010-Ohio-5711, 939 N.E.2d 831, at ¶ 5?

{¶ 37} Finally, the majority says that "[t]here is no justification for granting a writ of mandamus to compel Sehlmeyer to allow an in-person inspection, especially when, as here, the institution has offered to make the records available by other means." Majority opinion at ¶ 15. The justification is in R.C. 149.43(B)(1), which allows a requester to inspect a public record in person, and requires a public office to facilitate such a request: "Upon request and subject to division (B)(8) of this section, all public records responsive to the request shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours." R.C. 149.43(B)(2) also justifies McDougald's request to conduct an in-person inspection of the records: "To facilitate broader access to public records, a public office or the person responsible for public records shall organize and maintain public records in a manner that they can be made available for inspection or copying in accordance with division (B) of this section." R.C. 149.43 does not provide a choice to a public office regarding how it responds to a request to inspect records; it provides only a duty to perform. But the majority holds that if a public office can make the records available to the requester by providing copies, it does not have to allow the requester to personally

inspect those records. The majority's reasoning is certainly novel: it posits that if a public office can charge a citizen for copies of records, why should that citizen get to inspect those records in person for free? The majority sets a new statutory course, but it is not its course to set.

{¶ 38} To sum up, in attempting to justify its result, the majority suggests that there will never be a "first" case in which a prison official's decision to withhold an incarcerated individual's access to records would violate R.C. 149.43. The majority further creates a presumption against allowing an individual who is incarcerated at a maximum-security institution to access public records in person. And finally, the majority gives a public office the choice of whether to allow a requester to conduct an in-person inspection of a public record or to instead charge the requester for a copy of the record. It is unfortunate that the majority goes to these lengths to keep McDougald from accessing the public records he seeks to inspect in this case. As a result, records of consequence will be unavailable to other incarcerated individuals in the future.

*Questioning the precedent*

{¶ 39} The idea that a public office may reject a public-records request if its production might "unreasonably interfere with the discharge of the duties of the officer having custody" of the records is from *State ex rel. Patterson v. Ayers*, 171 Ohio St. 369, 171 N.E.2d 508 (1960), paragraph one of the syllabus, a case interpreting the common law regarding access to public records before the passage of Ohio's Public Records Act, R.C. 149.43. Our duty is to construe R.C. 149.43, and there is no provision in the statute that says a public record need not be produced if producing the record will inconvenience the public office.

{¶ 40} R.C. 149.43(B)(1) provides that "[u]pon request and subject to division (B)(8) of this section, all public records responsive to the request shall be promptly prepared and made available for inspection to *any person* at all reasonable times during regular business hours." (Emphasis added.) R.C. 149.43(B)(8)

16

recognizes that an incarcerated person may "inspect or * * * obtain a copy of" a public record as long as it does not involve a criminal investigation or prosecution. However, the incarcerated person may inspect a public record involving a criminal investigation or prosecution if "the judge who * * * made the adjudication with respect to the person * * * finds that the information sought in the public record is necessary to support what appears to be a justiciable claim of the person." *Id.*

{¶ 41} According to R.C. 149.43, an inmate who makes a public-records request and is not seeking a criminal file is included within "any person" whose public-records request seeking an inspection of public records must be honored at a reasonable time during regular business hours. Pursuant to a Department of Rehabilitation and Correction ("DRC") policy, "[p]ublic records are to be available for inspection Monday through Friday between 8:00 a.m. and 5:00 p.m. with the exception of published holidays. Public records must be made available for inspection promptly." DRC Policy 07-ORD-02, at 3, https://www.drc.ohio.gov/ Portals/0/Policies/DRC%20Policies/07-ORD-02.pdf?ver=2016-09-01-142045-303 (accessed June 29, 2020) [https://perma.cc/3432-ZRXB].

*Conclusion*

{¶ 42} Today, the majority unnecessarily strikes a major blow against incarcerated individuals' rights to inspect public records and creates another collateral consequence to being an incarcerated individual. At its core, the majority opinion holds that a prison official's denial of an incarcerated individual's public-records request is reasonable when that incarcerated individual is categorized as a maximum-level security risk.

{¶ 43} Sehlmeyer provided no reason for denying McDougald's request to inspect the records he asked to have access to. Although in her affidavit that she submitted to this court as evidence she speaks broadly of the factors she might consider in deciding whether to grant an incarcerated individual's request for access to public records, she did not apply any of those factors to McDougald's request.

Rather, this case simply involves a public office denying a public-records request without an explanation for that denial in violation of R.C. 149.43(B)(3).

{¶ 44} I dissent and would order Sehlmeyer to allow McDougald to inspect the records.  I would also award McDougald statutory damages in the amount of $1,000.

_____

Jerone McDougald, pro se.

Dave Yost, Attorney General, and Zachary M. Holscher, Assistant Attorney General, for respondent.

_____