[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Slager v. Trelka*, Slip Opinion No. 2024-Ohio-5125.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5125

THE STATE EX REL. SLAGER *v*. TRELKA ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Slager v. Trelka*, Slip Opinion No. 2024-Ohio-5125.]

*Mandamus—Public-records requests—Prison's public-information officer had no duty to produce records requested by inmate that no longer exist or never existed, create new records to meet inmate's demands, produce security records exempt from release, produce records in response to inmate's overly broad request, or produce records available only in medium that would be contraband in violation of prison rules—Writ and relator's requests for statutory damages and court costs denied.*

(No. 2023-1573—Submitted September 3, 2024—Decided October 29, 2024.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by FISCHER, DEWINE, DONNELLY, STEWART, and DETERS, JJ. KENNEDY, C.J., concurred in part and

dissented in part, with an opinion joined by BRUNNER, J.

**Per Curiam.**

{¶ 1} Relator, Michael W. Slager, requests a writ of mandamus compelling the production of public records responsive to numerous requests he made by electronic prison kite. Respondents are Cynthia Davis, the warden of Southern Ohio Correction Facility ("SOCF"); Brandi Trelka, the warden's administrative assistant and SOCF's public-information officer; and a "Ms. Peirce" in the legal department of the Ohio Department of Rehabilitation and Correction ("DRC"). Slager also seeks awards of statutory damages and court costs. We deny Slager's request for a writ of mandamus and deny his requests for statutory damages and court costs. In addition, we deny respondents' motion to strike Slager's merit brief, grant respondents' motion for leave to amend their merit brief, deny Slager's motion for leave to file evidence, and grant Slager's motion for leave to file a revised reply brief.

## I. BACKGROUND

{¶ 2} Between July and October 2023, while an inmate at SOCF, Slager requested numerous public records through the prison's electronic-kite system. Trelka, whose duties include responding to inmates' public-records requests, replied to Slager's kites. Slager's records requests and Trelka's responses to them are detailed below.

{¶ 3} Slager commenced this action in December 2023, alleging that respondents had failed to provide him with copies of the records he had requested. Respondents filed a motion to dismiss Slager's complaint. On March 13, 2024, we denied the motion in part and ordered respondents to file an answer as to 15 of the records requests attached to the complaint.[1] 2024-Ohio-880. We issued an

_____

1. Although Davis and "Ms. Peirce" remain respondents in this action, Slager's allegations against them did not survive the motion to dismiss.

alternative writ as to those 15 requests, granted respondents' motion to dismiss as to the remaining requests, and set a schedule for the presentation of evidence and merit briefing. *Id.* Trelka has submitted her affidavit and copies of the relevant correspondence between Slager and herself.

{¶ 4} Before addressing the merits of Slager's complaint, we first consider the parties' pending motions, each of which is unopposed.

## II. PENDING MOTIONS

### A. Respondents' Motion to Strike Slager's Merit Brief

{¶ 5} Respondents move to strike Slager's merit brief on multiple grounds. First, they argue that Slager's brief does not comply with S.Ct.Prac.R. 16.02(C), which provides that a merit brief shall not exceed 50 numbered pages "exclusive of the table of contents, the table of authorities cited, the certificate of service, and the appendix." Respondents contend that Slager's brief is 187 pages long, but that is not exclusive of the items listed in the rule. The body of Slager's brief is only 32 numbered pages.

{¶ 6} Respondents next argue that Slager's brief does not comply with S.Ct.Prac.R. 16.02(B)(4), which provides that a merit brief shall contain arguments headed by propositions of law. They contend that Slager's propositions of law are "nonsensical and do not frame a proper legal question" because he "rewrote his public records request and/or replead[ed] the allegations contained in his mandamus Complaint." While Slager's brief is repetitive and contains few arguments, it is not devoid of them. Moreover, his arguments are headed by four propositions of law.

{¶ 7} Respondents further contend that Slager's merit brief should be stricken as a sanction for "frivolous conduct" because it does not present any reasonable questions for review, does not comply with this court's alternative writ limiting the controversy to certain records requests, and admits that Slager has received all requested public records subject to disclosure. They also complain that

Slager signed his merit brief with a typewritten "X" rather than his signature, and they argue that the brief therefore does not comply with S.Ct.Prac.R. 3.08 or Civ.R. 11.

{¶ 8} S.Ct.Prac.R. 3.08 and Civ.R. 11 both require an unrepresented party to sign any document filed in court. The purpose of the signature is to certify that the party has read the document being filed, that to the best of the party's "knowledge, information, and belief there is good ground to support it," and that "it is not interposed for delay." Civ.R. 11. "If a document is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the document had not been served." *Id*. Here, Slager's failure to affix his signature to his merit brief appears to be merely an oversight. All other documents that Slager filed in this court include his signature. Respondents' position—that Slager willfully violated the rule "in an attempt to disavow responsibility for filing his noncompliant brief and as a way to avoid any possible sanctions"—is unfounded.

{¶ 9} Finally, none of the alleged deficiencies in Slager's merit brief have prevented respondents from responding to Slager's arguments, nor do they hinder our ability to issue a decision addressing them. *See, e.g.*, *State ex rel. Sultaana v. Mansfield Corr. Inst.*, 2023-Ohio-1177, ¶ 13, citing *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 2006-Ohio-903, ¶ 14. For these reasons, we deny respondents' motion to strike Slager's merit brief.

**B. Respondents' Motion for Leave to Amend Their Merit Brief**

{¶ 10} Respondents have also filed a motion for leave to amend their own merit brief to include an inadvertently omitted table of contents and table of authorities. Because Slager does not oppose the motion and no prejudice will result from the amendments, we grant respondents' motion for leave to amend their merit brief by adding the table of contents and table of authorities that are attached to the motion.

### C. Slager's Motion for Leave to File Evidence

{¶ 11} The alternative writ we issued on March 13, 2024, ordered that the parties' evidence be filed by April 11. *See* 2024-Ohio-880. Slager did not file evidence by that date. On May 28, Slager filed a "motion for leave to file evidence and/or motion for order or [sic] relief pursuant to S.Ct.Prac.R. 4.01(A)(1)." Slager submitted with his motion the proposed evidence that he wants us to consider, in the form of his affidavit and exhibits. Many of these documents are copies of the 15 records-request exhibits that survived respondents' motion to dismiss. Respondents also submitted copies of these records requests in their evidence.

{¶ 12} In his motion, Slager claims that he sent his evidence and merit brief simultaneously to the clerk of the court and that the clerk's office returned his evidence because it did not comply with our order. The docket reflects that Slager's merit brief was filed on April 18, which was seven days past the deadline for the parties' evidence. Accordingly, we deny Slager's motion for leave to file evidence for failure to comply with the alternative writ.

### D. Slager's Motion for Leave to File Revised Reply Brief

{¶ 13} In a prior order, we sua sponte struck pages 21 through 48 of Slager's reply brief for his failure to comply with S.Ct.Prac.R. 16.04(B)(1)'s 20-page limitation. 2024-Ohio-2060. Thereafter, Slager moved for leave to file a revised reply brief under S.Ct.Prac.R. 3.13(B)(3) ("When the time permitted by these rules to file the original document has expired, a party may file a motion for leave to file a revised document."). The revised reply brief attached to Slager's motion for leave complies with S.Ct.Prac.R. 16.04(B)(1). Because respondents do not oppose the motion and no prejudice will result, we grant Slager's motion for leave. The revised reply brief will supersede the original reply brief in accordance with S.Ct.Prac.R. 3.13(C).

### III.  LEGAL ANALYSIS
### A.  Mandamus Claim

{¶ 14} Slager seeks a writ of mandamus compelling respondents to provide him with copies of records he requested under the Public Records Act, as required under R.C. 149.43(B)(1).  Generally, under R.C. 149.43(B)(1):

> upon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time.  If a public record contains information that is exempt from the duty to permit public inspection or to copy the public record, the public office or the person responsible for the public record shall make available all of the information within the public record that is not exempt.

{¶ 15} Mandamus is an appropriate remedy to compel compliance with the Public Records Act.  *Physicians Commt. for Responsible Medicine*, 2006-Ohio-903, at ¶ 6; *see also* R.C. 149.43(C)(1)(b).  To obtain a writ of mandamus, the relator must show by clear and convincing evidence that he has a clear legal right to the requested relief and that the respondent has a clear legal duty to provide it.  *State ex rel. Cincinnati Enquirer v. Sage*, 2015-Ohio-974, ¶ 10.  The relator bears the burden to plead and prove facts showing that he requested a record kept by a public office and that the public office or person responsible for public records failed to make the record available.  *State ex rel. Ware v. Beggs*, 2024-Ohio-611, ¶ 11.

*1.  Requests for information about correctional officers*

### a.  Exhibits C, D, and E

{¶ 16} Between August 23 and September 2, 2023, Slager submitted three slightly different requests for lists of the same information: (1) names of the "SRT

officers" and "COs" that worked on July 8 during a "shake down" and (2) any complaints filed against "CO Hurst, CO Harris and why." On September 2, Slager also requested a list "of any contraband conduct reports filed" against him on July 8. Trelka responded that she needed "clarification as to what specific public record" Slager was asking for, because no such lists exist. Trelka also requested a "cash slip" to cover the cost of any copies that would need to be made. Slager has not submitted evidence indicating that he provided Trelka with clarification or a "cash slip" in connection with these requests.

{¶ 17} Because a public office has no duty to create new documents to meet a requester's demand, *see State ex rel. Fant v. Mengel*, 62 Ohio St.3d 197, 198 (1991), Slager is not entitled to a writ to compel fulfillment of these requests. Moreover, a public office is permitted to require the prepayment of the costs of providing requested records. *See State ex rel. Ware v. Akron*, 2021-Ohio-624, ¶ 13. Thus, to the extent that any documents Slager requested between August 23 and September 2 actually exist, his failure to provide a cash slip to pay in advance the cost of making copies of them defeats this claim.

### b. Exhibits H and I

{¶ 18} On September 19, Slager requested multiple lists of work schedules and work posts of all correctional officers for the months of July and August. Trelka responded on September 21 that these are security records and that under R.C. 149.433, they are not public records. R.C. 149.433(B)(1) provides that a "security record" is not a public record and "is not subject to mandatory release or disclosure" under R.C. 149.43. A "security record" includes "[a]ny record that contains information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage." R.C. 149.433(A)(1). Trelka maintains that the requested work schedules are exempt from release in that their disclosure "would inherently jeopardize the security of the institution and its internal measures to thwart and prevent attacks, maintain order, and protect the prison."

**{¶ 19}** We have previously "determined that the relevance of prison shift-assignment duty rosters to the security of a prison was apparent from the face of [such] documents and held that the records qualified as security records for the purposes of the Public Records Act." *Sultaana*, 2023-Ohio-1177, at ¶ 34, citing *McDougald v. Greene*, 2020-Ohio-4268, ¶ 9. Because Slager requests the same type of information here, we find that the records are exempt from release as security records under R.C. 149.433(B)(1).

### 2. Requests for body-camera footage

### a. Exhibits GG, HH, and NN[2]

**{¶ 20}** On October 2, Slager requested "a copy of the Bodycam footage for both c/o Hurst [on] July 8, 2023 between 9am to 2pm." Later that day, Slager requested "cop[ies] of the Bodycam of both C/O Hurst [f]rom July 8, 2023, [t]o August 8, 2023, [f]rom 6:00 am [t]o 2:00 pm." Trelka responded to both requests the next day, stating that she would "send this to OSC Legal for review" and that "they are the only ones who can release body cam footage."

### b. Exhibits BB, MM, and OO

**{¶ 21}** On October 4 and 8, Slager requested copies of emails that had been sent to other prison offices "about the Bodycam footage" and about his "legal paperwork." Slager also sent another records request on October 8, which was similar to his October 2 request, in which he sought the following body-camera footage:

- for both c/o Hurst that worked July 8, [20]23 from 6am to 2pm
- for both c/o Harris that worked on July 23, 2023 from 6am to 2pm

---

2. Slager's Exhibits HH and NN are duplicate copies of the same request. Slager makes no factual allegations in his complaint regarding the duplicate Exhibit NN, so only Exhibits GG and HH are discussed above.

- for both c/o Harris that worked on August 6, 2023 from 6am to 2pm

- for both c/o Hurst that worked on July 18, 2023 from 6am to 2pm

- for both c/o Hurst that worked from July 8, 2023 to July 30, 2023 from 6am to 2pm.[3]

Trelka responded on October 12 that she had sent each of these requests to the DRC's legal department.[4] She also stated that Slager had previously requested the first-listed item—body-camera footage from July 8—and that "there are no responsive records for that request."

{¶ 22} On October 19, Trelka sent Slager a letter that included copies of the emails he had requested. Slager provides no evidence or argument suggesting that Trelka failed to provide any of the emails Strelka had requested. Because Slager received the records responsive to these requests before instituting this action, we deny this claim. *See State ex rel. Payne v. Rose*, 2023-Ohio-3801, ¶ 8 (no cognizable claim in mandamus exists when records have been produced prior to requester's bringing the action).

{¶ 23} Also in the October 19 letter, Trelka relayed to Slager the following response from the legal department to his October 8 request for body-camera footage: "There is no responsive video for this request. For the last one, he needs to be more specific (request for 'Bodycam footage for both c/o Hurst that worked from July 8, 2023, to July 30, 2023, from 6am to 2pm')." Trelka concluded, "Please consider my

---

3. There were apparently two correctional officers at SOCF with the surname Hurst and two with the surname Harris, hence Slager's requesting body-camera footage for "both c/o Hurst" and "both c/o Harris."

4. Trelka avers that SOCF's process, under DRC's "Body Worn Camera" Policy (10-SAF-22), is to send all body-worn-camera requests to DRC's legal department.

portion of your request fulfilled and resubmit your specific request for body cam footage to me for legal consideration if you so choose."

**{¶ 24}** Slager provides no evidence to rebut Trelka's attestation that there are no records responsive to the first four of the five footage requests Slager listed. *See State ex rel. McDougald v. Greene*, 2020-Ohio-2782, ¶ 9 (when there is no evidence to rebut an affidavit claiming that requested records do not exist, the requester is not entitled to a writ compelling fulfillment of the requests). As to his requests for footage from July 8 through July 30 and July 8 through August 8, Slager does not contend that his request was sufficiently specific or that he submitted a revised request. "'It is the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue.'" *State ex rel. Morgan v. New Lexington*, 2006-Ohio-6365, ¶ 29, quoting *State ex rel. Fant v. Tober*, 1993 WL 173743, *1 (8th Dist. Apr. 28, 1993). Moreover, "the Public Records Act 'does not contemplate that any individual has the right to a complete duplication of voluminous files kept by government agencies.'" *State ex rel. Zidonis v. Columbus State Community College*, 2012-Ohio-4228, ¶ 21, quoting *State ex rel. Warren Newspapers, Inc. v. Hutson*, 1994-Ohio-5, ¶ 22. The voluminous nature of a request for several weeks of body-camera footage from two correctional officers, amounting to 368 hours of footage, is self-evident. Additionally, Slager avers that Trelka had previously advised him that body-camera footage is not organized or retained in the manner of his requests (e.g., by officer name, date, and time). Trelka advised Slager that body-camera footage is instead captured and retained to document certain events (e.g., a fight, by date and time).

**{¶ 25}** Accordingly, Slager has not met his burden to show by clear and convincing evidence that he is entitled to a writ compelling Trelka to produce any of the body-camera footage as requested. And for this reason, we do not consider Trelka's additional argument that body-camera footage is exempt from release as a "security record."

### 3. *Requests for DVR footage*

#### a. **Exhibits B, W, and EE**

{¶ 26} On October 18, Slager requested "a copy of the DVR footage for July 8, 2023 for L hallway from 6:00 am to 2:00 pm" and "a copy of the DVR footage for L-5 on July 7, 2023 from 3:00 am to 2:00 pm." On October 19, Slager requested "a copy of the DVR footage of J-2 on July 8, 2023 from 6:00am to 2:00pm." Trelka responded on October 22 that no records responsive to these requests exist, because DVR footage is maintained for only 30 days.[5] Slager provides no contradictory evidence. Because records that no longer exist cannot be obtained through a mandamus action, *see State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 2008-Ohio-6253, ¶ 27, Slager is not entitled to a writ to compel fulfillment of these requests.

#### b. **Exhibit PP**

{¶ 27} On October 24, Slager requested "a copy of the L-8 DVR footag[e] on October 19, 2023 from 12:00pm to 4:00pm." Trelka responded on October 29 that Slager is "not eligible to obtain a copy of the footage" but that he is "permitted to view the footage in [his] unit." She avers that Slager never responded to her invitation to view the footage. Trelka maintains that by permitting Slager to view the footage, she fulfilled her duty to make the requested record available to him. However, Slager did not ask to inspect the DVR footage; he requested a copy of it. Trelka admits that the DVR footage existed when Slager requested a copy but avers that SOCF does not give DVDs to inmates, "as that would be considered contraband and a moot point because [they] have no way to review it."

{¶ 28} Generally, when a requester asks for a copy of a public record rather than to inspect it, the public office or person responsible for the public record "shall make copies of the requested public record available to the requester at cost and

---

5. Trelka avers that DRC's Surveillance policy (09-INV-01) has been updated, effective November 1, 2023, to require 45-day retention of camera footage.

within a reasonable period of time." R.C. 149.43(B)(1); *see State ex rel. Dispatch Printing Co. v. Morrow Cty. Prosecutor's Office*, 2005-Ohio-685, ¶ 12-14 (by permitting requester only an opportunity to listen to a 9-1-1 tape, the respondents violated their duty to provide requester with a copy of the tape); *Toledo Blade Co.* at ¶ 37 (distinguishing between requests for copies of records and requests for permission to inspect records); *see also* R.C. 149.43(B)(6) (a public office shall provide copies of requested records in accordance with the requester's choice of medium).

**{¶ 29}** This court also recognizes, however, that "'prison administrators must be accorded deference in adopting . . . policies and practices to preserve internal order and to maintain institutional security.'" (Ellipsis in original.) *State ex rel. McDougald v. Sehlmeyer*, 2020-Ohio-3927, ¶ 15, quoting *Briscoe v. Dept. of Rehab. & Corr.*, 2003-Ohio-3533, ¶ 16. For instance, in *Sehlmeyer*, an inmate requested permission to inspect certain public records, and the prison officials instead offered to provide copies of the records at cost. *Sehlmeyer* at ¶ 2-3. The inmate asked for a writ to compel the prison officials to allow him to inspect the records. *Id*. at ¶ 5. Generally, when a requester asks for permission to inspect a public record, "all public records responsive to the request shall be promptly prepared and made available for inspection." R.C. 149.43(B)(1). Nevertheless, we declined to compel the prison officials to allow an inspection as requested because the officials had identified a security issue with doing so and had offered to make the records available by other means. *Sehlmeyer* at ¶ 14-15. We explained that "permitting an inmate to personally inspect records is not required when doing so would create security issues, unreasonably interfere with the officials' discharge of their duties, and violate prison rules." *Id*. at ¶ 14, citing *State ex rel. Dehler v. Mohr*, 2011-Ohio-959, ¶ 2.

**{¶ 30}** Here, Trelka attests that inmates are not permitted to have DVDs because they are considered contraband. *See* Adm.Code 5120-9-19(B)(3) ("An

inmate may not receive or possess videotapes, compact discs, computer discs, or material in any other form or medium not otherwise authorized by this rule without prior approval from the managing officer or designee."). This is a sufficient security-based rationale for respondents' refusal to provide a DVD copy of the footage Slager requested and their making it available for inspection instead. Just as prison officials are not required to permit an inmate to personally inspect records in certain circumstances, *see Sehlmeyer* at ¶ 14, neither should prison officials be required to provide contraband to an inmate in response to a public-records request when doing so would create security issues, unreasonably interfere with the officials' discharge of their duties, and/or violate prison rules.

{¶ 31} Slager contends that his case is like *State ex rel. Ware v. Wine*, 2022-Ohio-4472. In *Wine*, this court granted an inmate's request for a writ of mandamus to order the production of public records he had requested after prison officials denied his requests for paper copies of the records. *Wine*, however, is distinguishable from this case in two ways. First, in *Wine*, the requester was not given an opportunity to inspect the records and thus lacked access to them altogether. *See id.* at ¶ 2-6. Second, the prison officials in *Wine* failed to explain why providing copies of the records to the requester would create a security risk. *See id.* at ¶ 11.

{¶ 32} Accordingly, Slager is not entitled to a writ to compel fulfillment of his October 24 request.

{¶ 33} For the reasons explained above, we deny Slager's mandamus claim.

## B. Statutory Damages and Court Costs

{¶ 34} A requester who transmits a "written request by . . . electronic submission" to receive copies of public records in a manner that fairly describes the public records to the "person responsible for the requested public records" is entitled to recover statutory damages "if a court determines that . . . the person responsible for public records failed to comply with an obligation" under R.C.

149.43(B). R.C. 149.43(C)(2). Thus, a requester may be entitled to statutory damages even if a court denies the requester's mandamus claim. *State ex rel. Ware v. Giavasis*, 2020-Ohio-3700, ¶ 10.

**{¶ 35}** Slager maintains that he is entitled to statutory damages because Trelka failed to fulfill many of his public-records requests. However, he has failed to prove by clear and convincing evidence that Trelka failed to comply with any obligation under R.C. 149.43(B). *See State ex rel. Mobley v. Toledo*, 2022-Ohio-3889, ¶ 12. Trelka had no duty to produce records that no longer exist or never existed, create new records to meet Slager's demands, produce security records that are exempt from release, produce records in response to an overly broad request, or produce records available only in a medium that would be contraband in violation of prison rules. Moreover, the records that Trelka did produce were made available to Slager within a reasonable time. Accordingly, we deny Slager's request for an award of statutory damages.

**{¶ 36}** Slager also seeks an award of court costs under R.C. 149.43(C). However, Slager has no obligation to pay costs because he filed an affidavit of indigency. We therefore find that Slager is not entitled to an award of court costs. *See State ex rel. McDougald v. Greene*, 2020-Ohio-5100, ¶ 18.

## IV. CONCLUSION

**{¶ 37}** Based on the foregoing, we deny respondents' motion to strike Slager's merit brief and we deny Slager's motion for leave to file evidence. We grant respondents' motion for leave to amend their merit brief and we grant Slager's motion for leave to file a revised reply brief. We deny Slager's claim for a writ of mandamus. And we deny Slager's requests for statutory damages and court costs.

Writ denied.

_____

**KENNEDY, C.J., joined by BRUNNER, J., concurring in part and dissenting in part.**

{¶ 38} Respondent Brandi Trelka, the warden's administrative assistant at the Southern Ohio Correction Facility and the prison's public-information officer, properly denied most of the public-records requests submitted by relator, Michael W. Slager. The majority therefore correctly denies Slager a writ of mandamus regarding those records. I part ways with the majority, however, to the extent that it applies—or actually, misapplies—the security-record exemption to a public official's duty to produce public records. Under R.C. 149.433(A)(1), the security-records exemption applies to records that contain information "directly used" to maintain the security of a public office. But other than ipse dixit in her affidavit that the records are security records, Trelka has failed to produce any evidence indicating that the lists requested by Slager of work schedules and work posts of correctional officers for July and August 2023 are directly used by the prison to maintain its security. I therefore would grant a writ of mandamus ordering Trelka to provide those lists and would award statutory damages and court costs to Slager. Consequently, I concur in part and dissent in part.

{¶ 39} This case presents a narrow issue regarding whether outdated lists of work schedules and work posts of correctional officers can constitute security records within the meaning of R.C. 149.433(A)(1), and it returns us to a familiar place: statutory interpretation. As we explained long ago, "[t]he question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus. "When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said." *Jones v. Action Coupling & Equip., Inc.*, 2003-Ohio-1099, ¶ 12. Therefore, "[a]n unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus.

**{¶ 40}** The Public Records Act, R.C. 149.43, requires a public office to make copies of public records available to any person upon request within a reasonable period of time. R.C. 149.43(B)(1). A "public record" is a record kept by a "public office," R.C. 149.43(A)(1), and it is not disputed in this case that the requested lists of work schedules and work posts of correctional officers are records of a public office and that Trelka is their custodian.

**{¶ 41}** R.C. 149.433(B)(1) provides that a record kept by a public office that is a security record is not a public record under R.C. 149.43 and is not subject to mandatory release or disclosure under that section. R.C. 149.433(A)(1) defines "security record" as including "[a]ny record that contains information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage."

**{¶ 42}** The brief submitted on behalf of Trelka asserts that the release of year-old lists of work schedules and work posts of correctional officers "would inherently jeopardize the security of the institution and its internal measures to thwart and prevent attacks, maintain order, and protect the prison." The brief further asserts that "[a]llowing incarcerated persons to review the patterns, processes and response of Correction Officers would disclose . . . potential security weaknesses" and "would allow . . . the ability to develop a threat consistent with . . . any of the staff's daily patterns."

**{¶ 43}** Those assertions sound plausible (though they are not supported by sworn testimony). But the statutory definition of "security record" focuses on how the public office *uses* the information in the record. It is not enough that the record contains information that is relevant to the security of a public office. It does not matter that the information in that record, if released, might make the public office vulnerable to attack, interference, or sabotage. It does not change the calculus that the record contains information that could result in a serious threat to life and limb. A record is not a security record if it does not contain information *directly used* to

protect and maintain the security of the public office from attack, interference, or sabotage.

**{¶ 44}** Trelka had the burden to prove that the requested lists of work schedules and work posts of correctional officers "fall[] squarely within the security-record exception codified in R.C. 149.433(B)." *State ex rel. Rogers v. Dept. of Rehab. & Corr*., 2018-Ohio-5111, ¶ 19. However, she has presented no evidence to show how outdated information in those lists from July and August 2023 is *currently* used to protect or secure the prison from attack, interference, or sabotage. *See id.* at ¶ 20 (the fact that record was properly withheld when initially requested did not establish that it was a security record in perpetuity). There is no proof that anyone has even touched these records since August 2023. A conclusory statement in an affidavit that records are security records is not sufficient to establish the exemption's applicability. *State ex rel. Cincinnati Enquirer v. Wilson*, 2024-Ohio-182, ¶ 10.

**{¶ 45}** The General Assembly has not crafted a Public Records Act exemption that applies whenever a records custodian has a subjective view that the information a requested record contains could be dangerous if placed in the wrong hands. If such an exemption is to be made, it is up to the General Assembly to do it—this court "may not rewrite the plain and unambiguous language of a statute under the guise of statutory interpretation," *Pelletier v. Campbell*, 2018-Ohio-2121, ¶ 20.

**{¶ 46}** Because I would grant the writ and award statutory damages and court costs for Trelka's withholding of the requested lists of work schedules and work posts of correctional officers for July and August 2023, I dissent from Parts III(A)(1)(b) and III(B) of the majority opinion.

_____

Michael W. Slager, pro se.

Dave Yost, Attorney General, and Matthew P. Convery, John H. Bates, and

George Horváth, Assistant Attorneys General, for respondents.

_____