[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Sandy v. Spatny*, Slip Opinion No. 2026-Ohio-1176.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1176

THE STATE EX REL. SANDY *v.* SPATNY, WARDEN.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Sandy v. Spatny*, Slip Opinion No. 2026-Ohio-1176.]

*Mandamus—Inmate failed to present clear and convincing evidence demonstrating that he has a clear legal right to receive drug-addiction treatment of his choice or that warden has a clear legal duty to make it available to him— Writ denied.*

(No. 2025-0960—Submitted January 6, 2026—Decided April 3, 2026.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.

**Per Curiam.**

{¶ 1} In this original action for a writ of mandamus, relator, Joseph Sandy, seeks to compel respondent—Jerry Spatny, the warden of Grafton Correctional Institution ("Grafton"), where Sandy is confined—to make available to him medication-assisted-treatment ("MAT") in the form of buprenorphine or methadone for a drug addiction. Spatny filed an answer denying most of Sandy's allegations and asserting that Sandy has "no clear legal right to . . . placement in a MAT program which is not medically appropriate after he refused prior placement in a medically appropriate MAT program." This court granted an alternative writ, setting a schedule for the submission of evidence and briefs. 2025-Ohio-4537.

{¶ 2} The evidence establishes that appropriate Grafton staff members screened Sandy for the MAT program and that based on their clinical assessment, they recommended that he begin treatment with naltrexone. Sandy declined, objecting to the recommended form of treatment. For the reasons explained below, we conclude that Sandy has not presented clear and convincing evidence demonstrating that he has a clear legal right to receive the treatment of his choice or that Spatny has a clear legal duty to make it available to him. Moreover, the evidence shows that Sandy has an adequate remedy in the ordinary course of the law. Therefore, we deny Sandy's complaint for a writ of mandamus.

## I. BACKGROUND

{¶ 3} Unless otherwise indicated, all language quoted in Part I of this opinion is taken from the affidavit of Kristine Edwards, B.S.N., R.N., C.H.S.A., which Spatny submitted into evidence. Edwards is employed by the Ohio Department of Rehabilitation and Correction ("DRC") as its policy and strategic-initiative administrator and as director of its MAT program.

### A. Medication-assisted treatment (MAT)

{¶ 4} Medication-assisted treatment is "a type of addiction treatment that provides maintenance pharmacotherapy using an antagonist and/or agonist

medication, which is combined with other comprehensive treatment services, including medical and psychosocial services."

{¶ 5} An antagonist medication, such as naltrexone, "blocks or inhibits a receptor's activation and stops or reduces a physiological effect." In layman's terms, an antagonist "works like a blocker that sits in the lock" and "stops any other key (agonist or natural body chemical) from turning the lock."

{¶ 6} In contrast, "[b]uprenorphine/naloxone (aka Suboxone) is a partial opioid agonist" that "bind[s] to the same brain receptors as other opioids" and "reduces cravings and withdrawal symptoms." In layman's terms, an opioid-agonist medication "works like a key that fits and turns a lock, opening the door to a specific response." "Methadone is a synthetic opioid agonist that acts on the same receptors as natural opioids, but, in correct doses, does not have the extreme euphoric effect of natural opioids."

## B. DRC's MAT program

{¶ 7} Beginning in October 2022, DRC "expanded its [MAT] program" to offer treatment with naltrexone, Suboxone, or methadone "to all eligible inmates in state prison facilities" with the goal of "provid[ing] comprehensive care for individuals with opioid use disorder . . . within the Ohio correctional system." "Upon intake, or as clinically indicated, incarcerated persons . . . are evaluated for [opioid-use disorder] and assessed for suitability for MAT" using an evidence-based questionnaire. Thereafter, Grafton clinical staff members "assess each [incarcerated person's] substance use history, drug of choice, and drug screening results to determine the most clinically appropriate medication and treatment plan."

{¶ 8} Following the clinical assessment, an eligible incarcerated person "may" be offered treatment with Suboxone or methadone under DRC protocol No. K-12 or treatment with naltrexone under DRC protocol No. K-10. Treatment with Suboxone or methadone under DRC protocol No. K-12 is also referred to as the

Opioid Treatment Program ("OTP"), which is part of DRC's MAT program. An incarcerated person "may refuse or withdraw from the MAT program."

### C. Case background and Sandy's clinical assessment

{¶ 9} Sandy is serving a life sentence imposed by the Erie County Court of Common Pleas for convictions for aggravated murder, tampering with evidence, and driving while under the influence of alcohol or drugs.

{¶ 10} On June 13, 2024, the trial court issued an order granting a motion in which Sandy requested that he be placed in DRC's MAT program. The court's judgment entry states simply that Sandy "shall be placed in the M.A.T. Program" and that he "shall comply with all requirements of said program."

{¶ 11} On July 11, 2024, "prompted by the court order," Sandy was clinically assessed for MAT by Christina Nunamaker, L.I.S.W. Nunamaker summarized the assessment in a report that Spatny submitted into evidence.

{¶ 12} According to Nunamaker's report, Sandy "arrived at approximately 7:51 AM" and "verbalize[d] an understanding that Recovery Services[1] recieved [sic] his court order" and that "the court order prompted a referral for [a] program screen to discuss treatment engagement and programming with Recovery Services." The report indicates that Sandy "initially present[ed] calm but became irritated and dismissive":

> Upon reviewing the program screen with [Sandy], [he] was notified that he did not meet the criteria to prompt a referral to . . . [the] OTP. [Sandy] was provided with education regarding MAT services in which he stated[,] "Nobody wants Naltrexone, I don't

---

1. According to the K-12 protocol, "Recovery Services" is a "Bureau of the Ohio Department of Mental Health and Addiction Services . . . that in partnership with [DRC] exists for the provision of substance use disorder treatment and associated services which support recovery from alcohol and other drug use."

want Naltrexone. I will file another order telling the judge to put me in [the] OTP. You have to listen to a judge[.]" [Sandy] then refused to sign the [Recovery Services Treatment Recommendations] form . . . . [Sandy] then exited the room.

[Sandy] declined services. No follow up clinically warranted at this time.

{¶ 13} The Erie County clerk of courts' online docket for Sandy's criminal case indicates that on July 19, 2024, he filed a motion to modify the trial court's June 13 judgment entry. In the motion, Sandy asked the court to change the wording of the entry so as to specifically order his placement "into the *K12* M.A.T. Program." (Emphasis added.) The court granted Sandy's motion and on July 31 entered an amended judgment entry ordering that he be placed in "the K12 M.A.T. Program" and that he comply with its requirements. However, as discussed below, Sandy's mandamus complaint neither refers to nor has attached to it the court's amended entry.

{¶ 14} On March 24, 2025, Sandy filed a motion asking the trial court to order the Erie County clerk of courts to serve a copy of the court's June 13, 2024 order on DRC's director and Spatny. The court granted Sandy's motion on April 4, 2025.

### D. This mandamus action

{¶ 15} On July 24, 2025, Sandy instituted this pro se original action for a writ of mandamus in this court, claiming that the trial court's June 13, 2024 judgment entry required Grafton clinical staff to place him in the OTP. Sandy also alleges—and Spatny denies—that Sandy was "advised by various personnel at [Grafton]" that "absent service of the Order directly from the Court," DRC will not "comply therewith." As noted above, Sandy does not mention in his complaint, or attach to it, the trial court's July 31, 2024 amended judgment entry.

{¶ 16} On October 1, 2025, this court granted an alternative writ, setting a schedule for the submission of evidence and briefs. 2025-Ohio-4537. On October 14, Sandy filed an unsigned "statement of the evidence" indicating that "all evidence he seeks to submit in this case has been attached to the initial Complaint for Writ of Mandamus and accompanying Merit Brief in this case." Despite not signing the statement or its certificate of service, Sandy appended to the statement a notarized affidavit in which he reaffirms the allegations he made in the complaint.

{¶ 17} Sandy filed a merit brief but not a reply brief. Spatny filed the evidence described above and a responsive merit brief.

## II. ANALYSIS

### A. Spatny's request to strike

{¶ 18} Before addressing the merits of Sandy's mandamus claim, Spatny asks this court to strike, under Civ.R. 11, Sandy's October 14, 2025 evidentiary submission because it is unsigned and the certificate of service contains no date. Sandy likewise failed to sign his merit brief, including its certificate of service.

{¶ 19} "S.Ct.Prac.R. 3.08 and Civ.R. 11 both require an unrepresented party to sign any document filed in court. The purpose of the signature is to certify that the party has read the document being filed, that to the best of the party's 'knowledge, information, and belief there is good ground to support it,' and that 'it is not interposed for delay.'" *State ex rel. Slager v. Trelka*, 2024-Ohio-5125, ¶ 8, quoting Civ.R. 11. Civ.R. 11 further provides that "[i]f a document is not signed or is signed with intent to defeat the purpose of th[e] rule, it may be stricken as sham and false and the action may proceed as though the document had not been served."

{¶ 20} Spatny argues that Sandy's failure to sign his "statement of the evidence" warrants our striking it. Spatny also observes that the affidavit Sandy attached to his statement refers to the trial court's July 31, 2024 amended judgment entry and that Sandy failed to submit the amended entry for this court's

6

consideration. Not having filed a reply brief, Sandy has not responded to Spatny's request to strike.

{¶ 21} Sandy's failures to sign his "statement of the evidence" and his merit brief are most likely oversights rather than intentional attempts to defraud this court or Spatny. The fact that Sandy submitted a signed and notarized affidavit indicates that his failure to sign the accompanying filing was an oversight and not intentional, and there is no evidence suggesting that he intended to defeat the purpose of Civ.R. 11. Moreover, Spatny has responded to the arguments asserted by Sandy in support of his request for a writ of mandamus. Under these circumstances, we deny Spatny's request to strike Sandy's statement of the evidence.

**B. Sandy's request for a writ of mandamus**

{¶ 22} Sandy seeks a writ of mandamus to compel Spatny to place him in the OTP so that he can receive treatment with Suboxone or methadone for his drug addiction. To obtain the requested writ, Sandy must establish by clear and convincing evidence that (1) he has a clear legal right to the requested relief, (2) Spatny has a clear legal duty to provide it, and (3) Sandy does not have an adequate remedy in the ordinary course of the law. *State ex rel. Maras v. LaRose*, 2022-Ohio-866, ¶ 18. A writ of mandamus is an extraordinary remedy that should be exercised with caution and issued only when the right is clear. *State ex rel. Taylor v. Glasser*, 50 Ohio St.2d 165, 166 (1977).

*1. Sandy fails to show a clear legal right or a clear legal duty*

**a. Sandy's reliance on the June 13, 2024 judgment entry**

{¶ 23} Sandy contends that Spatny has a clear legal duty to place him in the OTP as a result of the trial court's June 13, 2024 judgment entry. Contrary to Sandy's claim, we have held that the creation of a duty enforceable in mandamus is the function of the legislature. *See State ex rel. Shie v. Adult Parole Auth.*, 2022-Ohio-270, ¶ 11; *State ex rel. Tarrier v. Pub. Emps. Retirement Bd.*, 2021-Ohio-649, ¶ 18, quoting *State ex rel. Perry Twp. Bd. of Trustees v. Husted*, 2018-Ohio-3830,

¶ 13 ("'this court cannot create a legal duty enforceable in mandamus; only the General Assembly has that authority'"). Thus, we reject Sandy's claim that the trial court's June 2024 judgment entry created a clear legal duty enforceable in mandamus.

{¶ 24} Even if the trial court's June 2024 judgment entry could create a clear legal duty enforceable in mandamus, the court ordered in that entry only that Sandy be placed in DRC's MAT program and that he comply with all of its requirements. Pursuant to the entry, clinical staff members at Grafton screened Sandy for his suitability for the MAT program and to determine the most appropriate treatment. The entry did not direct that Sandy be referred for a particular form of treatment in the program.

{¶ 25} Accordingly, to the extent that Sandy relies on the June 13, 2024 judgment entry, we conclude that he has failed to show that Spatny has a clear legal duty to place him in the OTP.

### b. Sandy's reliance on the July 31, 2024 amended judgment entry

{¶ 26} In his merit brief, Sandy refers for the first time to the trial court's July 31, 2024 judgment entry that ordered his placement in the "K12 MAT Program." Sandy's failure to amend his complaint to include issuance of the amended entry precludes him from relying on it to support his claim. *See State ex rel. Sands v. Court of Common Pleas Judge*, 2018-Ohio-4245, ¶ 11. Moreover, as Spatny points out, Sandy has not included a copy of the amended entry in his submission of evidence, nor has he attached a copy of it to any of his pleadings.

{¶ 27} Even if the record contained the trial court's July 31, 2024 amended judgment entry, it would not show that Sandy has a clear legal right to placement in the OTP or that Spatny has a clear legal duty to place him in that program. Sandy's evaluation revealed that he had a "personal desire for recovery, MAT/OTP Enrollment" but that during a prior stint in the MAT program, he refused to cooperate in a random drug test. As a result of that rule violation and his clinical

assessment, Nunamaker recommended that Sandy participate in the MAT program under the K-10 protocol for treatment with naltrexone.

{¶ 28} Eligibility for DRC's MAT program is defined in DRC protocol Nos. K-10 and K-12. The two protocols set forth the requirements and procedures to be followed in evaluating incarcerated persons for MAT with either naltrexone (under No. K-10) or Suboxone or methadone in the OTP (under No. K-12). The protocols contain detailed step-by-step directives explaining how DRC personnel are to determine eligibility for, and administer, each form of treatment. Sandy does not dispute DRC's authority to adopt protocol Nos. K-10 and K-12 for its MAT program. And there is no indication that DRC adopted either protocol in violation of the laws governing DRC. As Spatny's evidence demonstrates, Sandy received a clinical assessment to determine and discuss appropriate treatment, Nunamaker recommended a form of treatment based on that assessment, and Sandy declined the recommended treatment.

{¶ 29} Accordingly, we conclude that even if the record contained the trial court's July 31, 2024 amended judgment entry, Sandy could not show that he has a clear legal right to placement in the OTP or that Spatny has a clear legal duty to place him in that program.

*2. Sandy has an adequate remedy in the ordinary course of the law*

{¶ 30} Finally, even if Sandy could show that he has a clear legal right to be placed in the OTP and that Spatny has a clear legal duty to place him there, Sandy would still not be entitled to a writ of mandamus, because he has not shown that he lacks an adequate remedy in the ordinary course of the law. A motion to enforce the trial court's July 31, 2024 amended entry is an adequate remedy in the ordinary course of the law that precludes mandamus relief in this case.

### III. CONCLUSION

{¶ 31} Sandy's evidence fails to demonstrate either that he has a clear legal right to receive the treatment he prefers for his drug addiction or that Spatny has a

clear legal duty to make that treatment available to him. In any event, the evidence demonstrates that Sandy has an adequate remedy in the ordinary course of the law. Therefore, we deny Sandy's request for a writ of mandamus.

Writ denied.

_____

Joseph Sandy, pro se.

Dave Yost, Attorney General, and Marcy Vonderwell and Jennifer A. Driscoll, Assistant Attorneys General, for respondent.

_____